UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                            :
CRAIG PERKINS,                                              :
                                        Plaintiff,          :
                                                            :
                       -v-                                  :
                                                            :
199 SEIU UNITED HEALTHCARE WORKERS EAST;                    :
BRONX LEBANON HOSPITAL,                                     :
                                                            :
                                        Defendants.         :
                                                            :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/17/14

14 Civ. 1681 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Craig Perkins brings this suit against his employer, Bronx Lebanon Hospital (the

"Hospital"), and his union, 199 SEIU United Healthcare Workers East (the "Union"). Perkins

alleges that the Hospital wrongfully assigned him duties outside his job classification, denied

him lunch breaks, and failed to pay him overtime compensation, in violation of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185, the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 216(b), and the New York Labor Law ("NYLL"), N.Y. Lab. L. § 663.

Perkins also alleges that the Union breached its duty of fair representation by ignoring his

requests to file grievances, in violation of the National Labor Relations Act ("NLRA"), 29

U.S.C. § 159(a).

The Hospital and the Union, in separate motions, now move to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Perkins' complaint states no

claim upon which relief may be granted and that some claims are time-barred. For the following

reasons, the Court grants the motions to dismiss.

## I.      Background

### A.      Factual Background[1]

On August 4, 2004, the Hospital hired Perkins as a Fire Safety Officer.  Am. Compl. ¶ 1.

Since beginning his employment at the Hospital, Perkins has been a member of the Union.  *Id.*

¶ 2.  The relationship among the parties is governed by a binding Collective Bargaining

Agreement ("CBA").  *Id.* ¶¶ 9, 38.

---

[1] These facts are drawn primarily from the Amended Complaint.  Dkt. 19.  To resolve the motions to dismiss, the Court assumes all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

In addition, the Court considered the CBA, which was attached to the Amended Complaint, Dkt. 19, and submitted as Exhibit A to the Declaration of Richard Dorn in support of defendant Union's Motion to Dismiss, Dkt. 30 ("Dorn Declaration").  Because this document was attached to the Amended Complaint, and indeed was recapitulated there verbatim, it is properly considered on a motion to dismiss.  *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014).

The Court also considered various National Labor Relations Board ("NLRB") filings attached to the Dorn Declaration as Exhibits B, C, and D.  "[I]t is 'well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).'"  *Burfeindt v. Postupack*, 509 F. App'x 65, 67 (2d Cir. 2013) (summary order) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)).  This includes "charges filed with the NLRB and NLRB decisions."  *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 121 (S.D.N.Y. 2012) *aff'd*, 556 F. App'x 56 (2d Cir. 2014) (citation omitted); *see also Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (approving the district court's consideration of an NLRB charge in deciding a motion to dismiss).  Ultimately, however, these documents supplied informative background and context but did not affect the outcome reached.

The Court did not consider Exhibits E through J of the Dorn Declaration.  Those documents are neither matters of public record nor are they incorporated into the Amended Complaint by reference.  Defendant Union contends that Perkins "had to be aware of" these documents and observes that some were "referenced by the NLRB."  Dkt. 31 ("Union Br.") 11 n.1.  But "mere notice or possession" of documents does not suffice; "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Nothing in the Amended Complaint indicates that Perkins recalled, much less relied on, these documents in drafting his pleadings.  The Court therefore declined to consider them.  *See id.* at 154.

Starting in 2005, Perkins' supervisor began assigning Perkins the duties of a Cashier Officer—a separate position—and informed Perkins that he was expected to simultaneously perform the duties of a Fire Safety Officer and a Cashier Officer.  *Id.* ¶ 16.  Despite the increase in his duties, the Hospital did not increase Perkins' pay and continued to pay him only the wage rate for a Fire Safety Officer.  *Id.* ¶¶ 17–18.  At various times, including at least four times between July 2013 and February 2014, Perkins complained to his supervisors that he should either receive only assignments legitimate to his position as a Fire Safety Officer or be compensated at a higher rate commensurate with his increased responsibilities.  *Id.* ¶ 19.  Perkins' supervisors ignored these complaints.  *Id.* ¶ 20, 30.

In approximately 2008, Perkins' supervisor told him that he was no longer permitted to take a lunch break.  *Id.* ¶ 21.  Rather, Perkins was expected to eat lunch at his job post while continuing his work.  *Id.*  Although Perkins complied with his that instruction and remained on duty during his lunch, the Hospital never compensated Perkins for that time.  *Id.* ¶¶ 23–24.  On various occasions, including at least four instances between July 2013 and February 2014, Perkins complained to his supervisors that he should either receive lunch breaks or compensation for that time.  *Id.* ¶ 24.  Perkins' supervisors ignored these complaints.  *Id.* ¶ 25, 30.

Also beginning in 2008, Perkins' supervisors directed him to work more than his regularly scheduled 37.5 hours per week.  *Id.* ¶ 22.  Perkins received no compensation for the additional hours he worked.  *Id.* ¶ 23.  Perkins repeatedly demanded overtime compensation from his supervisors, including on the same four instances between July 2013 and February 2014.  *Id.* ¶ 24.  His supervisors again ignored his complaints.  *Id.* ¶¶ 25, 30.

For reasons the Amended Complaint does not explain, it was not until July 23, 2013 that Perkins first requested the Union's assistance in addressing his concerns about his additional

duties, lunch breaks, and lack of overtime compensation.  *Id.* ¶ 26.  That day, via a text message, Perkins asked his Union representative, Aida Morales, to file grievances against the Hospital on his behalf.  *Id.*  On September 6, 2013, and October 30, 2013, Perkins sent Morales additional text messages reiterating his requests.  *Id.*  Morales did not respond to Perkins' messages, and the Union did not file grievances on Perkins' behalf regarding these issues.  *Id.* ¶¶ 27, 29.

**B.    Procedural History**

On February 14, 2014, Perkins filed the original *pro se* Complaint in the Supreme Court of New York in the Bronx.  *See* Dkt. 1.  On March 11, 2014, the Union removed the case to this Court.  *Id.*  The next day, the Hospital consented to that removal.  Dkt. 4.  On March 18, 2014, both the Hospital and the Union moved to dismiss.  Dkt. 9, 13.  In response, the Court issued an order granting Perkins leave to file an amended complaint.  *See* Dkt. 17, 21.

On May 2, 2014, Perkins, through newly retained counsel, filed an Amended Complaint, Dkt. 19, alleging six causes of action: two of breach of contract, two of breach of the Union's duty of fair representation, and two of failure to pay overtime compensation.  Am. Compl. ¶¶ 36–80.  Perkins seeks compensatory damages for his lost wages and benefits with interest, liquidated damages, damages for emotional distress, attorneys' fees, and an order enjoining the Hospital from engaging in further wrongful conduct.  *Id.* ¶¶ (1)–(7).

On June 4, 2014, the Hospital filed a motion to dismiss the Amended Complaint, Dkt. 28, and an accompanying memorandum of law, Dkt. 29 ("Hospital Br.").  On June 16, 2014, the Union did the same, *see* Dkt. 33, 34 ("Union Br."), along with a declaration in support of its motion, Dkt. 35 ("Dorn Declaration").  Defendants argue there that the Amended Complaint fails to state a claim as to any cause of action, and that the duty of fair representation claims and the breach of contract claims are time-barred.  On July 9, 2014, Perkins submitted briefs in

opposition to both motions to dismiss.  Dkt. 37 ("Pl. Hospital Br."), 38 ("Pl. Union Br.").  On July 16, 2014, defendants submitted reply briefs.  Dkt.  40 ("Hospital Reply Br."), 39 ("Union Reply Br.").

## II.    Discussion

### A.        Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B.        Counts Three and Four: Breach of the Duty of Fair Representation

Perkins alleges that the Union breached its duty of fair representation by failing to file grievances on his behalf, Am. Compl. ¶¶ 56–63, and by failing to demand negotiations with the Hospital regarding those grievances, *id.* ¶¶ 64–68.  As defendants correctly argue, however, Counts Three and Four do not state a claim upon which relief can be granted and, in any event, are time-barred.

### 1.    Failure to State a Claim

A union has an "obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct," both while collectively bargaining with employers and in enforcing the resulting agreements. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 271 (2009) ("[T]he NLRA has been interpreted to impose a 'duty of fair representation' on labor unions, which a union breaches 'when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.'" (quoting *Marquez v. Screen Actors*, 525 U.S. 33, 44 (1998))).

To state a claim for breach of a union's duty of fair representation, a plaintiff must plead that (1) the union's conduct was "arbitrary, discriminatory, or in bad faith" and (2) there was "a causal connection" between the union's wrongful conduct and the member's injuries. *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001) [hereinafter "*White II*"] (citations omitted). To meet this standard, the union's conduct must be "so far outside a wide range of reasonableness that it is wholly irrational," *Marquez*, 525 U.S. at 45 (citations omitted) (defining "arbitrary") or be "fraudulent, deceitful, or dishonest," *White II*, 237 F.3d at 179 (defining "bad faith"). Alleged "acts of omission" must be "egregious" and fall "far short of minimum standards of fairness." *N.L.R.B. v. Local 282, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 740 F.2d 141, 147 (2d Cir. 1984) (citations omitted).

The facts alleged in the Amended Complaint describe, at most, one union representative's decision to ignore three text messages regarding grievances that were five and eight years old. The Complaint does not include a transcription of those messages. Nor does it offer any details as to their contents. The Court is left with no concrete indication of what information Perkins

texted to Morales nor how this information was conveyed.  The Amended Complaint does not allege that Perkins made any other effort to pursue help from the Union, to give the Union evidence of the Hospital's purported wrongdoing, or to utilize the formal grievance procedure established by the CBA.[2]

The allegations in the Amended Complaint do not supply a sufficient factual basis on which the Court can infer that the Union's conduct was discriminatory, arbitrary, or in bad faith. "A union's failure or refusal to pursue a grievance on its own does not constitute a breach of the duty of fair representation."[3]  *Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 706 (S.D.N.Y. 2006) *aff'd*, 208 F. App'x 66 (2d Cir. 2006); *see also, e.g.*, *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 563 (S.D.N.Y. 2005) ("[R]efusing to pursue a grievance does not automatically constitute a breach of the duty of fair representation.").  Indeed, "the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994); *see also United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372–73 (1990)

---

[2] Under that procedure, when an employee is unable to resolve a grievance with his supervisor, the employee is to present his grievance in a signed writing.  *See* Am. Compl. ¶ 31; Dorn Declaration Ex. A.  Even assuming that the text messages presented the substance of Perkins' grievances, they are not equivalent to the signed writing required by the CBA.

[3] The case on which Perkins relies is not to the contrary.  It states only that, where a plaintiff had "supplied the Union with medical evidence supporting his position, the Union might well have breached its duty had it ignored [plaintiff's] complaint."  *Vaca*, 386 U.S. at 194.  Had Perkins given Morales evidence supporting his claim against the Hospital, Morales' failure to respond "might" perhaps have constituted a breach.  But the Amended Complaint does not allege that Perkins furnished Morales with any such evidence.  Instead, as alleged, Perkins sent Morales three text messages with unspecified content.

("[M]ere negligence, even in the enforcement of a collective-bargaining agreement, [does] not state a claim for breach of the duty of fair representation.").

The Amended Complaint is particularly deficient in failing to allege facts indicating that Morales acted irrationally or with an improper motive.  The statement that the Union "failed to provide a reasonable, non-arbitrary or capricious investigation," Am. Compl. ¶ 61, is vague and conclusory.  *See Twombly*, 550 U.S. at 556–57.  Without concrete allegations as to the content of Perkins' text messages, there is no basis to infer that Morales, in not initiating an investigation or otherwise following up, behaved arbitrarily or in bad faith.  Under the facts alleged, it is at least equally plausible that, after receiving Perkins' texts, Morales did not regard Perkins' claim as consequential.  It is also plausible that Morales, in good faith, simply misjudged the merits of Perkins' claim, or merely forgot to respond to the text messages, perhaps regarding them as unlikely vehicle for conveying a serious claim.[4]

In all events, the Amended Complaint fails to allege facts on which Morales could be said to have acted arbitrarily, in bad faith, or with a discriminatory motive.   Counts Three and Four must therefore be dismissed for failure to state a claim for breach of the Union's duty of fair representation.

## 2.    Statute of Limitations

Even assuming that Counts Three and Four stated claims for breach of the Union's duty of fair representation, those claims would be time-barred.  As the parties agree, such claims are

---

[4] If the NRLB's opinions from 2008 resolving Perkins' previously filed grievances are taken into account, yet another plausible thesis inconsistent with a breach of the duty of fair representation arises:  Morales could have taken Perkins' non-explicated text messages to relate to these by-then resolved grievances.  *See* Dorn Declaration Ex. B–D.  As explained in footnote 1, *supra*, the Court may properly consider matters of public record including NLRB opinions in resolving a motion to dismiss.

8

subject to a six-month statute of limitations.  *See White v. White Rose Food*, 128 F.3d 110, 114

(2d Cir. 1997) [hereinafter "*White I*"] (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S.

151, 169 (1983)).  It begins to run "when plaintiffs knew or reasonably should have known that

such a breach [of the duty of fair representation] had occurred," *id.* (citation omitted) (alteration

in original), or, as developed below, when the plaintiff is aware of his underlying grievance with

the employer but unjustifiably fails to notify the Union of it *see id.* at 115; *see also Maurer v.

Trans World Airlines, Inc.*, 316 F. Supp. 2d 84, 89 (D. Conn. 2003) (claim time-barred where

plaintiff "waited a full year after her dismissal prior to sending a letter requesting information as

to whether a grievance had been filed and the status of any grievance"); *Oliveras v. Garage

Mgmt. Corp.*, No. 99 Civ. 1352 (LAP), 2000 WL 1277321, at *4 (S.D.N.Y. Sept. 8, 2000)

("[A]ny cause of action by [plaintiff] for breach of the collective bargaining agreement must

have accrued on the date his employment ended with GMC, at the latest.").  Here, defendants

argue that Perkins' claims against the Union must be treated as having arisen in 2005 and 2008,

on the grounds he was obliged then to notify the Union that he wished it to take action against

the Hospital.  *See* Hospital Br. 7–10; Union Br. 12–15.  Perkins counters that the statute of

limitations on his claims did not begin to run until July 2013 at the earliest, because (1) he did

not notify the Union of his grievances until then (in the text messages sent to Morales) and (2)

the Union's silence in the face of these text messages prevented him from knowing whether the

Union was fulfilling its duties to him.  *See* Pl. Hospital Br. 13; Pl. Union Br. 16–17.  Defendants

have the better argument, for two reasons.

       First, and most important, as a matter of law, Perkins is chargeable with the failure to

report his underlying grievances to the Union for many years after they had arisen in 2005 and

2008.  He may not claim that, because he failed to raise these concerns with the Union until

2013, the statute of limitations for his claim against the Union did not start to run until then.   On

the contrary, in *White I*, the Second Circuit squarely held that an employee's unexplained delay

in requesting a union's assistance time-barred him from bringing such a claim against the Union:

> The plaintiffs here complain about an action taken by their employer in February
> 1993, yet their first formal request on their union to pursue their claim to arbitration
> was made in September 1994.  This is a delay of nineteen months—thirteen months
> longer than the limitations period prescribed by *DelCostello*.  The plaintiffs have
> offered no explanation as to why they could not have demanded that the union
> arbitrate their grievance immediately after they received their settlement paystubs
> in February 1993.  If they had done so, they would have known whether the union
> had breached its duty of fair representation within a very short time thereafter.
> *Their own lack of diligence should not toll the limitations period in their favor.*

128 F.3d at 115 (emphasis added).

*White I* makes Perkins' claim here time-barred.  Perkins complains of actions by the

Hospital that occurred starting in 2005 and 2008.  Had he promptly notified the Union of his

desire to file formal grievances and negotiate with the Hospital, he would have known in a

matter of days or weeks whether the Union had breached its duty to him.  Instead, Perkins failed

to seek the Union's assistance until 2013.  This unexplained delay is more than three times the

length of the delay the Second Circuit held unreasonable in *White I*.  The Amended Complaint

makes no attempt to explain Perkins' decision to sit on his rights for five and eight years.  Thus,

as in *White I*, Perkins' "own lack of diligence should not toll the limitations period in [his]

favor."  128 F.3d at 115; *see also, e.g.*, *Cooper v. AlliedBarton Sec. Servs.*, 422 F. App'x 33, 34

(2d Cir. 2011) (summary order) (claim untimely where plaintiff first filed a complaint one year

after his termination); *Glozman v. Retail, Wholesale & Chain Store Food Employees Union,

Local 338*, 204 F. Supp. 2d 615, 628 (S.D.N.Y. 2002) (claim untimely where plaintiff, after

termination, waited three months to formally request arbitration and 10 months to file

complaint).[5]  The "federal policy that favors prompt resolution" of labor disputes would be "disserved by postponing the accrual of an employee's cause of action." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 164 (2d Cir. 1989).

Second, to the extent Perkins claims that the Union's failure to respond to the initial text message on July 23, 2013 tolled the statute of limitations, Perkins is wrong.  Perkins argues that, given the Union's "unresponsiveness," he "could not have known whether the Union would have breached its duty of fair representation."  Pl. Hospital Br. 13.  Although "pinpointing an accrual date can be difficult when a union has been less than cooperative," a plaintiff's knowledge that a union has "done nothing" to pursue his grievance is "sufficient to start the statute of limitations running."  *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 68 (2d Cir. 1995); *see also Urena v. Am. Airlines, Inc.*, 152 F. App'x 63, 65 (2d Cir. 2005) (summary order) ("Because the [Union's] alleged breach was grounded in its failure to pursue a grievance, [plaintiff's] claim accrued when he had notice that the union was not going to take action."); *Ghartey*, 869 F.2d at 165 ("Where a union refuses or neglects to assist a union member . . . a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains."); *Glozman*, 204 F. Supp. 2d at 628 ("[Plaintiff] asserts that he attempted to contact [his union representative] between five to ten times in the three months following his termination . . . and that not one of these phone calls was returned.  Assuming the truth of these

---

[5] Seeking to distinguish *White I*, Perkins claims that that case held the plaintiff's claim time-barred "because the union investigated the case, and informed the employees in writing of the conclusion of its investigation."  Pl. Hospital Br. 12; Pl. Union Br. 15.  That is wrong.  The union's written notice to the plaintiff employees was irrelevant to the Second Circuit's holding.  Rather, as the passage quoted above reflects, *White I* turned on the plaintiffs' delay in seeking the union's assistance.  Had the union responded differently to the plaintiffs or had it not responded at all, the Court's holding would still have been that the unjustified 19-month delay in requesting the union's assistance time-barred plaintiffs from bringing a claim against the Union for breach of the duty of fair representation.

assertions, in the exercise of reasonable diligence, plaintiff should have discovered before [three months had passed] that [the Union] was not going to pursue a grievance on his behalf.").

Here, as noted, Perkins should have pursued his complaints with the Union promptly in 2005 and 2008, when they arose.  But even assuming that Perkins was entitled to wait until 2013 before bringing his complaints to the Union, he alleges that the union ignored his text messages. Am. Compl. ¶ 27.  After several days or a week of silence, Perkins could reasonably infer only that his grievance was not being pursued.  Perkins cannot credibly argue that he is entitled to a toll of the statute of limitations from that point forward, merely because he eventually followed up with two text messages.  Indeed, the law is loath to toll the statute of limitations based on a union's lack of response to a grieved employee's request where, as here, the "plaintiff [employee] does not avail himself of the established grievance mechanism, but instead chooses 'to follow his own, informal approach.'"  *Cohen*, 68 F.3d at 68 (quoting *Legutko v. Local 816, Int'l Bhd. of Teamsters*, 853 F.2d 1046, 1054 (2d Cir. 1988)).  Accordingly, Perkins' claim is untimely because it was not filed until February 14, 2014, nearly seven months after his first text message to Morales.

In a separate bid to sustain his claim against the Union, Perkins argues that "[t]he violations complained of are continuing."  Pl. Hospital Br. 9.  On this theory, Perkins appears to posit, his claim against the Union would refresh daily, until the Union acted to remedy his underlying claims against the Hospital.  That, too, is wrong, because the continuing violation doctrine, which allows a statutes of limitation to be refreshed in some other contexts, does not apply to breach of fair representation claims.  *See, e.g.*, *Strassberg v. New York Hotel & Motel Trades Council*, 31 F. App'x 15, 17 (2d Cir. 2002) (summary order) ("[T]he law in this Circuit is well settled that a continuous or ongoing failure by the union to represent a plaintiff after the

plaintiff knows or should know of the breach does not toll the statute of limitations."); *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995); *Scerba v. Allied Pilots Ass'n*, No. 13 Civ. 3694 (LAK) (AJP), 2013 WL 6481583, at *14 (S.D.N.Y. Dec. 10, 2013) (collecting cases). Otherwise, a plaintiff could "indefinitely delay resolution of labor disputes merely by bombarding his union with tiresome requests." *Legutko*, 853 F.2d at 1054.

For these reasons, Perkins' claims against the Union are time-barred.  He was obliged to, but did not, pursue those claims long ago.  For this additional reason, Counts Three and Four must be dismissed with prejudice.

### C.     Counts One and Two: Breach of Contract

Counts One and Two allege, respectively, that the Hospital assigned Cashier Officer duties to Perkins and failed to pay him overtime compensation, in breach of the collective bargaining agreement.  *See* Am. Compl. ¶¶ 36–55.  The Amended Complaint terms these "breach of contract" claims; the parties, heeding the case law, now refer to them as hybrid LMRA § 301/duty of fair representation claims.  *See* Hospital Br. 10; Union Br. 15; Pl. Hospital Br. 4; *see also Lomako v. N.Y. Inst. of Tech.*, No. 09 Civ. 6066 (HB), 2010 WL 1915041, at *7 (S.D.N.Y. May 12, 2010) ("[A]n employee may bring a claim against his employer . . . alleging that it breached a collective bargaining agreement, but because such claims require interpretation of the terms of the CBA, they are governed under the LMRA, and not ordinary breach-of-contract principles." (citing, *inter alia*, *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988))); *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 34 (2d Cir. 2000) ("Where, as here, the 'nature of the claim' is that the employer breached the CBA and that the union breached its duty to enforce the CBA," plaintiff "has alleged a hybrid § 301/fair representation claim.").

13

Like Counts Three and Four, Counts One and Two do not state a claim and, in any event, are time-barred.[6]

### 1. Failure to State a Claim

To provide recourse in federal court to employees with related claims against their employers and their unions, employees may bring "hybrid" claims for breach of contract under § 301 of the LMRA and for breach of the duty of fair representation under § 159 of the NLRA. *See Carrion*, 227 F.3d at 33–34 (citing *DelCostello*, 426 U.S. at 164); *Vera*, 424 F. Supp. 2d at 705. Such claims have two elements: "(1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing [a] grievance against the employer." *White I*, 128 F.3d at 113. Importantly, proof of the "Union's breach is a prerequisite to consideration of the merits of plaintiff's claim against" the employer. *Young v. U.S. Postal Serv.*, 907 F.2d 305, 307 (2d Cir. 1990); *accord DelCostello*, 462 U.S. at 165 (1983) ("To prevail against either the [employer] or the Union, [plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." (citations omitted)).

These claims necessarily fail here, with the Court's having held that the Amended Complaint does not state a claim for breach of the Union's duty of fair representation. The Court, therefore, has no occasion to address whether Perkins' allegations of an underlying breach by the Hospital of the collective bargaining agreement are adequately pled. *See Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 F. App'x 40, 42 (2d Cir. 2006) (summary order) ("[W]e

---

[6] Defendants separately argue that to bring these claims, Perkins was required, but failed, to exhaust the internal grievance procedure outlined in the CBA. Having found the Amended Complaint otherwise deficient, the Court has no occasion to reach this argument. *See Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009).

need not determine whether the [employer] breached the collective bargaining agreement . . .

because [plaintiff] has failed to establish that the Union breached its duty of fair

representation.").  Counts One and Two thus must be dismissed for failure to state a claim.

### 2.    Statute of Limitations

Hybrid § 301/duty of fair representation claims are subject to the same six-month statute

of limitations as pure duty of fair representation claims.  *Carrion*, 227 F.3d at 32 (citing

*DelCostello*, 426 U.S. at 165).  As with duty of fair representation claims, the limitations period

for hybrid claims "'accrues no later than the time when plaintiffs knew or reasonably should

have known that such a breach of the duty of fair representation had occurred.'"  *Kalyanaram v.*

*Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014) (quoting

*Cohen*, 68 F.3d at 67).  For the reasons stated *supra*, *see* Section II.B.2, Perkins' claim against

the Union is untimely.

Perkins argues that, under *White I,* he can maintain a breach of contract claim against the

Hospital even if his duty of fair representation claim against the Union is time-barred.  Pl.

Hospital Br. 14.  *White I* does not so hold.  There, the plaintiff filed a claim against his employer

within the six-month limitations period and attempted to join his union as a defendant more than

two years later.  128 F.3d at 114.  The Second Circuit held that plaintiff's timely claim against

his employer could proceed because the untimeliness of his claim against the union had no

bearing on the merits of the case.  *Id.* at 116.  Here, by contrast, Perkins filed claims against both

the Hospital and the Union years after the limitations period had expired.  Therefore, even

assuming that Counts One and Two stated a claim, they must be dismissed with prejudice as

time-barred.

### D.   Counts Five and Six: Failure to Pay Overtime Compensation

Counts Five and Six are of a different nature than the first four claims.  They allege, respectively, violations of the FLSA and the NYLL, arising out of the Hospital's failure to pay the overtime compensation required by those statutes.  *See* Am. Compl. ¶¶ 69–80.

The FLSA requires that, for all hours an employee works in excess of 40 hours per week, the employer pay overtime "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The NYLL is to the same effect.[7]

To state a claim under the FLSA for failure to pay overtime compensation, a complaint must include more than vague legal conclusions.  Relevant here, as the Second Circuit has recently held, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).   In *Lundy*, the Court dismissed a Complaint for failure to state an FLSA claim, where it failed to allege "a single workweek" in which plaintiffs had worked more than 40 hours without the required compensation.  *Id.*  It was not enough, the court held, for the Complaint to allege that plaintiffs "typically" worked a given number of hours, "occasionally" worked an extra shift, or "approximately twice per month" worked a certain number of shifts.  *Id.* at 114–15; *see also DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (finding plaintiff's allegation that she worked more than 40 hours in "some or

---

[7] *See* N.Y. Lab. L. § 663; *see also Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 n.5 (2d Cir. 2013) ("In light of the fact that the relevant portions of New York Labor Law do not diverge from the requirements of the FLSA, our conclusions below about the FLSA allegations apply equally to the NYLL state law claims." (citations and alterations omitted)); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 118 (2d Cir. 2013) (agreeing with the district court that "the same standard applie[s] to FLSA and NYLL claims").  For purposes of the ensuing analysis, the Court refers solely to the FLSA, but its analysis of a pleading defect as to plaintiff's claim of unpaid overtime runs to both counts.

all weeks" inadequate).  Rather, as the Second Circuit has held, "[t]o plead a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."  *Nakahata v. N.Y.–Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013).

Like the plaintiffs in *Lundy*, Perkins here alleges only that, "[a]t all relevant times" since 2008, he "was assigned and actually worked more than 40 hours per week," Am. Compl. ¶ 50; *see also id.* ¶¶ 22, 71, 77, and that the Hospital failed to pay him overtime compensation, *id.* ¶¶ 52, 72, 78.  Such "threadbare recitals of the elements of a cause of action" do not suffice to state a claim.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also DeJesus*, 726 F.3d at 89 (dismissing complaint that "tracked the statutory language of the FLSA, lifting its numbers and rehashing its formulation, but alleg[ed] no particular facts sufficient to raise a plausible inference of an FLSA overtime violation").  Without more detailed factual content— including identifying any specific week or time period in which Perkins worked overtime but was not lawfully paid for it—the Amended Complaint cannot "'[]cross the line from conceivable to plausible.'"  *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570).

In defense of the Amended Complaint, Perkins points to two sets of factual allegations contained therein: (1) allegations regarding the loss of Perkins' lunch breaks and (2) allegations regarding Perkins' dual job responsibilities.  *See* Pl. Hospital Br. 19–20.  These allegations, however, do not rescue his FLSA claim.  First, the Amended Complaint alleges that Perkins' regular schedule included 37.5 hours of work, Am. Compl. ¶ 22, 70, 76, and daily 30-minute lunch breaks, *id.* ¶ 51.  But even accepting as true that Perkins was required to work during his lunch breaks starting in 2008, he then worked exactly 40 hours per week, and *not* overtime hours.  Second, although Perkins alleges that his supervisors assigned him all of the job

17

responsibilities of a Fire Safety Officer and of a Cashier Officer, *id.* ¶ 16, he does not allege that he could not complete both sets of job responsibilities within his regularly scheduled 37.5-hour workweeks.  The Amended Complaint is silent as to how long it took Perkins to complete each set of duties.[8]  Thus, it fails to concretely allege that he worked overtime hours.

Perkins alternatively defends the Amended Complaint's lack of specificity by pointing to its allegation that the number of overtime hours he worked "is unknown" because it "is within the exclusive custody and control of the Hospital."  *Id.* ¶ 52.  He therefore contends that "[t]he precise amount of the plaintiff's rate of pay and hours he actually worked would be contained in the Hospital's payroll records, which can be accurately determined in discovery."  Pl. Hospital Br. 20.  Courts indeed have acknowledged the difficulty plaintiffs face in attempting to reconstruct their hours and pay totals without access to their employer's records.  *See DeJesus*, 726 F.3d at 86.  For this reason, plaintiffs need not "plead their hours with mathematical precision."  *Id.* at 90.

However, plaintiffs must at least draw on their own "memory and experience" to provide "developed factual allegations," consistent with the minimal standard articulated in *Lundy.  Id.* Perkins is reasonably expected to recall basic facts about his own work experience, such as when he worked overtime; whether he came to work early, stayed late, or took on additional shifts; approximately how many extra hours he worked per week; and the types of tasks he performed

---

[8] The Amended Complaint alleges that a Security Manual published by the Hospital contains descriptions of both job classifications.  Am. Compl. ¶ 12.  However, the Amended Complaint did not attach, quote, or summarize the relevant portions of that manual; nor have the parties supplied these to the Court.  In any event, since Perkins "has been simultaneously performing the duties of both" positions since 2005, *id.* ¶18, he was sufficiently knowledgeable about these matters to plead them adequately.  In any event, the allegations of the Amended Complaint do not permit the reasonable inference that Perkins worked, or that his job responsibilities obliged him to work, more than 40 hours per week.

during his overtime hours.  Here, the Amended Complaint fails to identify a specific week in which Perkins worked but was not lawfully compensated for overtime hours and therefore does not state a plausible overtime claim under the FLSA, as applied in *Lundy*.

The dismissal of Counts Five and Six, however, is without prejudice.  The recitation of facts in the Amended Complaint is so sparse that the Court cannot adequately assess whether Perkins could have stated a claim in a more thorough pleading.  *See Veterans in Positive Action, Inc. v. Dep't of Veterans Affairs Veterans Health Admin.*, No. 13 Civ. 3306 (PAE), 2013 WL 5597186, at \*2 (S.D.N.Y. Sept. 30, 2013).  It is conceivable that, given leave to amend, Perkins could adequately plead a violation of the FLSA that occurred within the statute of limitations.  Accordingly, Perkins is given leave to amend as to Counts Five and Six, but as to those claims only.  The Court thus does not preclude Perkins from seeking, in a Second Amended Complaint, to plead timely claims to the effect that the Hospital failed to pay the overtime compensation required by the FLSA and/or NYLL.  *See* 29 U.S.C. § 255 (establishing a two-year statute of limitations, extended to three years for "willful" violations); N.Y. Lab. L. § 663 (establishing a six-year statute of limitations).

## CONCLUSION

For the foregoing reasons, the Court dismisses the Amended Complaint in its entirety. The dismissal is with prejudice as to Counts One through Four, and without prejudice as to Counts Five and Six.

Any Second Amended Complaint must be filed by October 1, 2014, and defendants must file their respective Answers or other responsive pleadings by October 15, 2014.  Failure to file an amended complaint by October 1, 2014, absent leave of the Court, will result in the Court's

converting this dismissal of Perkins' FLSA and NYLL claims without prejudice into dismissal with prejudice.

The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 28 and 33.


SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: September 17, 2014
        New York, New York

20