UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CRAIG PERKINS,

                         Plaintiff,

             -against-                           14-CV-1681 (PAE)

1199SEIU UNITED HEALTHCARE WORKERS EAST
and BRONX-LEBANON HOSPITAL CENTER,

                         Defendants.
-------------------------------------------------------------------X

## DEFENDANT BRONX-LEBANON HOSPITAL CENTER'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS OR IN THE ALTERNATIVE
## FOR PARTIAL SUMMARY JUDGMENT

COLLAZO FLORENTINO & KEIL LLP
Philip F.  Repash
Nicholas R. Bauer
747 Third Avenue
New York, NY  10017

Attorneys for Defendant Bronx-Lebanon
Hospital Center

# TABLE OF CONTENTS

Table of Authorities ................................................................................................... ii

Preliminary Statement ................................................................................................ 1

Statement of Facts ...................................................................................................... 3

    A.  <u>Plaintiff's Employment with the Hospital</u> ........................................................ 3

    B.  <u>Procedural History</u> ............................................................................................ 5

Applicable Legal Standard ......................................................................................... 5

    A.  <u>Legal Standards Applicable to Motions Under Fed. R. Civ. P. 56</u> ....................5

    B.  <u>Legal Standards Applicable to Motions Under Fed. R. Civ. P. 12(b)(6)</u> ............ 6

Argument

I.  PLAINTIFF'S SECOND CAUSE OF ACTION MUST BE DISMISSED
    TO THE EXTENT IT ALLEGES A VIOLATION OF THE NYLL
    ARISING ON OR BEFORE MARCH 21, 2013 AS PLAINTIFF
    PREVIOUSLY RELEASED ANY SUCH CLAIMS ...............................................8

II.  PLAINTIFF'S ALLEGATION THAT HE WAS NEVER PAID OVERTIME
    UNDER THE NYLL PRIOR TO FEBRUARY 6, 2011 IS CONTRADICTED BY
    THE RECORDS ON WHICH PLAINTIFF RELIES AND SHOULD BE DISMISSED .....12

III.  PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION
    MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM .......................................13

    A. Plaintiff Fails to Plausibly Allege that His Pre- and
        Post-Shift Activities Were Compensable ........................................................14

    B. Plaintiff's New Allegation that He Performed Uncompensated Pre- and
        <u>Post-Shift Work Contradicts His Prior Pleadings and Should Be Disregarded</u> .................17

    C. <u>Plaintiff Fails to Plausibly Allege that His Meal Breaks Were Compensable</u> ..................20

    D. <u>Plaintiff's Has Not Pled a Cognizable "Gap Time" Claim</u> .................................. 21

    E. <u>Plaintiff's Third Amended Complaint Should Be Dismissed with Prejudice</u> ....................22

Conclusion ................................................................................................................ 23

# TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................ 6

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................... 6, 7, 8, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 6, 7, 8

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) ...................................... 13

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ........................................................

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) ..... 4

*Clark v. Buffalo Wire Works Co.*, 3 F. Supp. 2d 366 (W.D.N.Y. 1998) ........................................ 9

*Colliton v. Cravath, Swaine & Moore LLP*, 2008 LEXIS 74388 (S.D.N.Y. Sept. 24, 2008) .......18

*Cordoba v. Beau Deitl & Assocs.*, 2003 U.S. Dist. LEXIS 22033 (S.D.N.Y. Dec. 2, 2003) ........ 9

*Cramer v. Newburgh Molded Prods., Inc.*, 645 N.Y.S.2d 46 (App. Div. 2d. Dep't 1996) ........... 9

*Davis v. Eastman Kodak Co.*, 2007 U.S. Dist. LEXIS 23193 (W.D.N.Y. Mar. 29, 2007) ......... 11

*DeBlasio v. Merrill Lynch & Co., Inc.*, 2009 U.S. Dist. LEXIS 64848
(S.D.N.Y. July 27, 2009) ...................................................................................13

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996)......................................................23

*DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85 (2d Cir. 2013) .................................................... 15, 16

*DiFilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417 (S.D.N.Y. 2008) .............................. 10

*Dozier v. Deutsche Bank Trust Co. Ams.*, 2011 U.S. Dist. LEXIS 100467
(S.D.N.Y. Sept. 1, 2011) ........................................................................... 7, 18

*Finkel v. E.A. Techs., Inc.*, 2014 U.S. Dist. LEXIS 123616 (E.D.N.Y. Sept. 3, 2014) .................23

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................................23

*Gibbs v. City of New York*, 2015 U.S. Dist. LEXIS 7960 (S.D.N.Y. Jan. 23, 2015) ............. 16, 17

*Giordano v. City of New York*, 274 F.3d 740 (2d Cir. 2001) ....................................................... 6

*Green v. Niles*, No. 11 Civ. 1349 (PAE), 2012 U.S. Dist. LEXIS 40297
(S.D.N.Y. Mar. 23, 2012) ............................................................................... 7, 8, 18, 19

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010) ........................................................................ 7

*Hill v. Curcione*, 657 F.3d 116 (2d Cir. 2011) .............................................................................. 6

*Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568 (S.D.N.Y. 2008) ........................................... 10

*Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014) ............................................... 15

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986) ............................................................... 5

*Kulak v. City of New York*, 88 F.3d 63 (2d Cir. 1996) ................................................................. 6

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) .... 15, 16, 21, 22

*Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34 (1st Cir. 2013) ............................................... 6

*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 106 S. Ct. 1348 (1986) ..................................... 6

*Mergler v. Crystal Props. Assoc.*, 583 N.Y.S.2d 229 (1st Dep't 1992) ....................................... 9

*Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571 (S.D.N.Y. 2007) ................................................. 4, 13

*Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192 (2d Cir. 2013) ............ 15, 22

*Palm Beach Strategic Income v. Stanley P. Salzman, P.C.*, 2011 U.S. Dist. LEXIS 46867
(E.D.N.Y. May 2, 2011) ...................................................................................... 4, 18, 19

*Pampillonia v. RJR Nabisco. Inc.*, 138 F.3d 459 (2d Cir. 1998) ................................................. 9

*Pruell v. Caritas Christi*, 678 F.3d 10 (1st Cir. 2012) ..................................................... 15, 16, 19

*Rapoport v. Asia Electronics Holding Co., Inc.*, 88 F. Supp. 2d 179 (S.D.N.Y. 2000) ...............13

*Reich v. S. New Eng. Telecoms. Corp.*, 121 F.3d 58 (2d Cir. 1997) ........................................... 20

*Ruffin v. MotorCity Casino*, 2015 U.S. App. LEXIS 236 (6th Cir. Jan. 7, 2015) ...................... 20

*Simel v. JP Morgan Chase*, 2007 U.S. Dist. LEXIS 18693 (S.D.N.Y. Mar. 19, 2007) ............. 10

*Skluth v. United Merchs. & Mfrs., Inc.*, 559 N.Y.S.2d 280 (1st Dep't 1990) ............................... 9

*Wright v. Brae Burn Country Club, Inc.*, 2009 U.S. Dist. LEXIS 26492
(S.D.N.Y. Mar. 20, 2009) ..................................................................................... 10, 11

<u>Statutes</u>

29 U.S.C. § 254(a) ...................................................................................................................... 16

Regulations

29 C.F.R. §§ 785.27-785.32 ................................................................................. 16

29 C.F.R. § 785.47 .............................................................................................. 16

29 C.F.R. § 785.48 .............................................................................................. 15

Rules

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ...................................................................... 1, 6, 7, 8, 11

Fed. R. Civ. P. 56 ............................................................................. 1, 5, 6, 8, 11

Fed. R. Evid. 201 .................................................................................................. 7

## PRELIMINARY STATEMENT

Defendant Bronx-Lebanon Hospital Center (the "Hospital"), by and through its attorneys, Collazo Florentino & Keil LLP, submits this Memorandum of Law in support of its motion for dismissal of the Third Amended Complaint (the "TAC"), with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, as to Plaintiff's Second Cause of Action, for partial summary judgment as a matter of law, pursuant to Fed. R. Civ. P. 56. In the TAC, Plaintiff Craig Perkins ("Plaintiff") alleges claims against the Hospital for violations of the overtime provisions of the Fair Labor Standards Act ("FLSA") (First Cause of Action) and the New York Labor Law ("NYLL") (Second Cause of Action).

Plaintiff's overtime claims reflect a sweeping departure from those set forth in his prior pleadings, and yet they remain entirely devoid of any factual content and context necessary to state a plausible claim for relief. In Plaintiff's First Amended Complaint (the "FAC"), Plaintiff expressly alleged that he was *never* paid any overtime compensation by the Hospital throughout the FLSA and NYLL statutory periods. Following Plaintiff's reaffirmation of this claim in the Second Amended Complaint (the "SAC"), Defendant provided Plaintiff with his Hospital pay records covering the entire FLSA statutory period. These records show that Plaintiff was paid substantial amounts of overtime compensation (in some cases, more than Plaintiff alleged he was due). Nevertheless, given discrepancies between the number of shifts Plaintiff claimed he had worked in the SAC and the number of shifts reflected in the Hospital's pay records, Plaintiff requested a stay of the instant action on December 10, 2014 to examine Plaintiff's time clock and pay records in detail and to make a determination as to whether he should voluntarily discontinue this action. Defendant consented to this request and provided Plaintiff with his Hospital time clock records, covering the entire NYLL and FLSA statutory periods.

Upon examination of the TAC, it is apparent that Plaintiff simply copied these time clock records for the period February 6, 2011 through February 15, 2014, in order to claim entitlement to compensation for all minutes during which he was clocked in at the Hospital, regardless of whether or not he was actually performing compensable work during these times. Inexplicably, however, nowhere in the TAC does Plaintiff expressly allege that he ever performed any compensable pre- and post-shift work or assert any facts that would otherwise make such a claim plausible. Effectively, Plaintiff leaves it to the Hospital and the Court to parse through the near-microscopic spreadsheets he attaches to the TAC to divine the purported bases of his overtime claims.

Similarly, Plaintiff also alleges an unstated "gap time" claim relating to his unpaid lunch breaks. In the Court's Opinion and Order dismissing Plaintiff's FLSA and NYLL claims in the FAC, the Court noted that Plaintiff claimed that he worked a 37.5 hour workweek. As such, the Court noted, even if it were true that Plaintiff worked uncompensated 30 minute lunches each day (or 2.5 hours per week), this would still only constitute 40 hours of work per week and thus not state a claim for overtime. Nonetheless, Plaintiff now claims 2.5 straight time hours as unpaid "overtime" in virtually every week he worked for the period February 6, 2011 through February 15, 2014. Again, to discern this, one must probe the spreadsheets attached to the TAC, because Plaintiff makes no express allegation in his pleading that he is incorporating unpaid lunch breaks at his regular rate of pay as part of his claim for "overtime" damages.

As discussed in more detail below, Plaintiff's claims should be dismissed with prejudice for several reasons. First, the Hospital is entitled to dismissal of Plaintiff's Second Cause of Action, to the extent it alleges any violation of the NYLL arising on or before March 21, 2013. As Plaintiff and his counsel were fully aware prior to filing the TAC, Plaintiff previously

released any such claims under the NYLL pursuant to a valid and enforceable settlement agreement that he entered with the Hospital and 1199SEIU Healthcare Workers East (the "Union") on March 21, 2013.

Second, Plaintiff's categorical claim under the NYLL that he was *never* paid overtime compensation prior to February 6, 2011 is contradicted by the documents on which he relies and should not be accepted by the Court.

Third, Plaintiff's claims for unpaid overtime under both the FLSA and NYLL should be dismissed, because they consist of bare legal conclusions that fail to state any plausible claim for relief. Plaintiff's implicit allegation in the TAC that he performed uncompensated pre- and post-shift work is not only implausible but it also flatly contradicts Plaintiff's allegations in his prior pleadings in this case.

Finally, Plaintiff utterly fails to allege sufficient facts to state a plausible claim for unpaid lunch breaks, as he offers no details to create a plausible inference that this time was compensable. Moreover, Plaintiff's overtime claims are so baseless that they treat alleged unpaid straight time for lunch breaks as "overtime" damages, a theory of recovery that is not cognizable under either the FLSA or the NYLL.

For these reasons, and as set forth in more detail below, Plaintiff's TAC should be dismissed in its entirety and with prejudice.

## STATEMENT OF FACTS

A. <u>Plaintiff's Employment with the Hospital</u>

At all relevant times, Plaintiff was employed as a Fire Safety Officer ("FSO") at the Hospital and a member of a bargaining unit represented by the Union. Am. Compl. ¶¶ 1-2, 7-8.

3

In the TAC, Plaintiff alleges that he has worked more than 40 hours per week without full compensation for his overtime hours worked, in violation of the FLSA and NYLL. Plaintiff has attached spreadsheets (collectively the "Spreadsheets") to the TAC, purporting to detail his hours worked on a daily basis since February 2008.[1] The First Spreadsheet pertains to Plaintiff's NYLL claims only and covers the period February 17, 2008 through February 5, 2011. The Second Spreadsheet pertains to Plaintiff's FLSA claims (and the remaining portion of his NYLL claims), and covers the period February 6, 2011 through February 15, 2014. Plaintiff has also incorporated portions of his payroll records, Repash Decl., Ex. A, and time card records, Repash Decl., Ex. B, in the Second Spreadsheet to compare his arrival and departure times from the Hospital with the Hospital's records of his hours worked.[2] Plaintiff asserts that he has "demanded" compensation for his overtime hours worked since 2008, and that the Hospital has "ignored" these complaints. *See* TAC, ¶¶ 26-27.

Based on the foregoing, Plaintiff demands judgment against the Hospital in the sum of $82,473.12 in compensatory damages, as well as lost benefits, liquidated damages, attorney's fees, costs, and interest. *See* TAC.

---

[1] Because Plaintiff does not label or otherwise differentiate these spreadsheets, but assigns them separate pagination, the spreadsheet for the period covering February 17, 2008 to February 5, 2011 is referred herein as the "First Spreadsheet" or "TAC, Ex. 1;" the spreadsheet for the period covering February 6, 2011 to February 15, 2014 is referred to as the "Second Spreadsheet" or "TAC, Ex. 2." The spreadsheet attached to the SAC is described as "SAC, Ex. 1."

[2] The payroll and time clock records relied upon by Plaintiff to create the Second Spreadsheet are properly considered by the Court on Defendant's motion to dismiss pursuant to Rule 12(b)(6). Plaintiff expressly states that the Spreadsheets are "based upon records produced by the Hospital" and Plaintiff has selectively transcribed the content of these records verbatim. *See* TAC, ¶¶ 29-31; *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (court may consider documents a plaintiff "knew about and upon which [he] relied in bringing the suit"); *Palm Beach Strategic Income v. Stanley P. Salzman, P.C.*, 2011 U.S. Dist. LEXIS 46867, at *25 (E.D.N.Y. May 2, 2011) ("the Court can consider documents integral to the preparation of the pleadings") (*quoting Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007)).

B.  <u>Procedural History</u>

On or about February 14, 2014, Plaintiff filed a *pro se* Civil Action Complaint in the Supreme Court of the State of New York, County of the Bronx.  On March 11, 2014, the Union filed a Notice of Removal in this Court asserting that this Court has original jurisdiction over the matter pursuant to Section 301 of the Labor Management Relations Act.  On March 12, 2014, the Hospital filed its consent to the Union's Notice of Removal.  The Hospital and Union separately moved to dismiss the complaint on March 18, 2014.  Pursuant to the Court's orders of March 19, 2014, and May 2, 2014, Plaintiff, through his attorney, filed an Amended Complaint on or about May 2, 2014.  The Hospital and Union separately moved to dismiss.  By decision and order dated September 17, 2014, this Court dismissed the Amended Complaint under Rule 12(b)(6).  Although the Court dismissed Plaintiff's claims arising under Section 301 with prejudice, it granted Plaintiff leave to amend his claims against the Hospital arising under the FLSA and NYLL.  On October 28, 2014, Plaintiff filed a Second Amended Complaint alleging violations of the FLSA and NYLL.  On December 10, 2014, Plaintiff requested a stay of the action to examine the Hospital's pay and time clock records in detail.  Pursuant to the Court's order, dated December 11, 2014, Plaintiff filed a Third Amended Complaint on January 26, 2015.

## APPLICABLE LEGAL STANDARDS

A.  <u>Legal Standards Applicable to Motions Under Fed. R. Civ. P. 56</u>

The principal purpose of summary judgment is to dispose of meritless claims before engaging in a frivolous and costly trial. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987). A district court must grant summary judgment if "there is no genuine issue as to any material fact and … the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law.'" *Giordano v. City of New York*, 274 F.3d 740, 746 (2d Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 746-47.

Summary judgment must be granted unless a plaintiff presents concrete particulars to substantiate his claim, and to show that there is a genuine issue of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (to defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Kulak v. City of New York*, 88 F.3d 63, 70-71 (2d Cir. 1996) (mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment).

B. <u>Legal Standards Applicable to Motions Under Fed. R. Civ. P. 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a cause of action if a plaintiff's complaint fails "to state a claim upon which relief can be granted." Pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a motion to dismiss, plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). A viable claim must consist of "more than an unadorned, the-defendant-unlawfully-harmed me accusation;" instead, it will only have facial plausibility when the plaintiff pleads facts sufficient for a court to reasonably infer that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings must therefore consist of more than

mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Iqbal*, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 555).

The Supreme Court has recommended a two-pronged approach to applying this standard. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950). The Court should first identify pleadings "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 129 S. Ct. at 1950. Next, when there are well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 129 S. Ct. at 1950. The court, however, "need not accept as true allegations that conflict with a plaintiff's prior allegations." *Green v. Niles*, No. 11 Civ. 1349 (PAE), 2012 U.S. Dist. LEXIS 40297, at *17 (S.D.N.Y. Mar. 23, 2012) (*quoting Dozier v. Deutsche Bank Trust Co. Ams.*, 2011 U.S. Dist. LEXIS 100467, at *5 (S.D.N.Y. Sept. 1, 2011)).

Assessing the plausibility of the Complaint is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1940. Plaintiff's allegations, presumed to be true, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff must do more than present conclusory legal assertions that he is entitled to relief; instead, he must allege facts that are inconsistent with the far more plausible interpretation that the Defendant engaged in lawful conduct. *Iqbal*, 129 S. Ct. 1937; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The pleadings are not required to establish "probability" of misconduct, but must show more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

# ARGUMENT

## POINT I

### PLAINTIFF'S SECOND CAUSE OF ACTION MUST BE DISMISSED TO THE EXTENT IT ALLEGES A VIOLATION OF THE NYLL ARISING ON OR BEFORE MARCH 21, 2013, AS PLAINTIFF PREVIOUSLY RELEASED ANY SUCH CLAIMS

Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, Fed. R. Civ. P. 56, the Hospital is entitled to dismissal of Plaintiff's Second Cause of Action, with prejudice, to the extent it alleges any violation of the NYLL arising on or before March 21, 2013. Plaintiff previously released any such claims under the terms of a settlement agreement he entered with the Union and Hospital as of March 21, 2013 (the "Settlement Agreement"). *See* Declaration of Jasen Nhambiu, dated February 13, 2015 (hereinafter, "Nhambiu Decl."), Ex. A.

In August 2011, Plaintiff was discharged from his employment by the Hospital after an internal investigation determined that he had falsified fire safety log books, falsified time records, and abandoned his fire safety post without authorization. *See* Nhambiu Decl., ¶ 4, Ex. A; Def.'s Statement of Uncontested Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1 Statement"), ¶ 3. The Union grieved the discharge on behalf of Plaintiff and, in March 2013, the parties finalized negotiations over the terms and conditions of Plaintiff's reinstatement to the Hospital. *See* Nhambiu Decl., ¶5, Ex. B; Def.'s 56.1 Statement, ¶¶ 4-8. Plaintiff was represented by the Union's counsel in the settlement negotiations. *See* Nhambiu Decl., ¶ 5, Ex B; Def.'s 56.1 Statement, ¶ 6. The resulting Settlement Agreement provided, *inter alia*, that Plaintiff's discharge would be converted to a three-day suspension on the record, with no loss of seniority, and that he would receive a lump sum payment from the Hospital in the amount of $8,000.00. *See* Nhambiu Decl., ¶ 6, Ex. B, ¶¶ 1-2; Def.'s 56.1 Statement, ¶ 9. In exchange for these benefits, Plaintiff agreed to withdraw his grievance and arbitration with prejudice and

release the Hospital (and the other releasees) from, *inter alia*, any and all state law claims of any kind relating to his employment (the "Release"). *See* Nhambiu Decl., ¶ 7, Ex. B., ¶¶ 3-4; Def.'s 56.1 Statement, ¶ 10. The Release, in relevant part, states:

> The Grievant hereby forever and irrevocably releases the Employer and its employees, agents, representatives, and attorneys from any and all claims, charges, or complaints of any kind which he now has or may have, whether known or unknown to him at the time he signed this Agreement, relating to his employment with the Employer, the termination of his employment with Employer, or any other matter whatsoever based on acts or omissions which have occurred up to the date that he has signed this agreement. This release includes, but is not limited to claims, charges, or complaints under Title VII of the Civil Rights Act, the Americans with Disabilities Act, the New York State Human Rights Law, and any other federal, state, or local laws or regulations of any kind.

*See* Nhambiu Decl., ¶ 8, Ex. B., ¶ 4; Def.'s 56.1 Statement, ¶ 10.

Under New York law, a release, as here, that is "clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." *See, e.g., Pampillonia v. RJR Nabisco. Inc.*, 138 F.3d 459, 463 (2d Cir. 1998); *Cordoba v. Beau Deitl & Assocs.*, 2003 U.S. Dist. LEXIS 22033, at *20 (S.D.N.Y. Dec. 2, 2003). *Skluth v. United Merchs. & Mfrs., Inc.*, 559 N.Y.S.2d 280, 282 (1st Dep't 1990). The enforceability of a release does not depend on whether the releasor was subjectively aware of the precise claims to which the release pertains when executing the release. *Clark v. Buffalo Wire Works Co.*, 3 F. Supp. 2d 366, 373 (W.D.N.Y. 1998); *Mergler v. Crystal Props. Assoc.*, 583 N.Y.S.2d 229, 232 (1st Dep't 1992). A release will not be "treated lightly, and will be set aside by a court only for duress, illegality, fraud or mutual mistake." *See Cramer v. Newburgh Molded Prods., Inc.*, 645 N.Y.S.2d 46, 47 (App. Div. 2d. Dep't 1996); *see also Clark*, 3 F. Supp. 2d at 372-73 ("Releases are not to be disregarded, and [i]n the absence of fraud, duress, illegality or mistake, a general

release bars an action on any cause of action arising prior to its execution.") (internal quotations omitted).

Here, Plaintiff alleges in the TAC that his NYLL overtime claims arose in 2008 and that he has complained to the Hospital about the purported violations since that time. *See* TAC ¶¶ 18-19, 25-26. As such, there can be no dispute that in signing the Settlement Agreement on March 21, 2013, Plaintiff had knowledge of his purported overtime claims and knowingly and voluntarily released them up to the date he signed the Settlement Agreement.[3]

This Court has dismissed NYLL claims based upon release language virtually identical to that at issue here. *See, e.g.*, *Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 569-71 (S.D.N.Y. 2008) (holding that a broadly worded release, agreed to in exchange for a payment of $13,077, released employee's NYLL claims); *DiFilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417, 426-27 (S.D.N.Y. 2008) (enforcing release of NYLL overtime claims where employee signed an agreement releasing his employer from "any and all causes of action" in exchange for monetary payment); *see also Simel v. JP Morgan Chase*, 2007 U.S. Dist. LEXIS 18693, at *1-6 (S.D.N.Y. Mar. 19, 2007).

As this Court held in *Wright v. Brae Burn Country Club, Inc.*, 2009 U.S. Dist. LEXIS 26492, *12 (S.D.N.Y. Mar. 20, 2009), and as is directly applicable here:

> This is not the case of an individual contracting away his basic labor and employment rights to his own detriment and the detriment of others. Rather, [Plaintiff]'s waiver of his claims was given in exchange for settlement of a dispute between himself and [his employer] regarding his employment. He was represented by Union counsel in the settlement negotiations, and the language of the General Release was clear. Accordingly, [Plaintiff] waived his

---

[3] Defendant does not seek dismissal of Plaintiff's First Cause of Action, alleging violations of the FLSA, based upon the Release, because the Settlement Agreement was not supervised by the U.S. Secretary of Labor or by a court. *See Simel v. JP Morgan Chase*, 2007 U.S. Dist. LEXIS 18693, at **11-12 (S.D.N.Y. Mar. 19, 2007).

wage and hour claims under the NYLL . . . .

Finally, there can be no dispute that Plaintiff accepted the benefits from the Hospital set forth in the Settlement Agreement, including the $8,000.00 lump sum payment, conversion of his disciplinary penalty to a suspension on the record, and reinstatement to his former position as a Fire Safety Officer.[4] *See* Nhambiu Decl., ¶¶ 10-11, Ex. C, Ex. D; Def.'s 56.1 Statement, ¶¶ 11-14. By such conduct, Plaintiff has ratified the Release and may not now seek to avoid its consequences. *See, e.g., Davis v. Eastman Kodak Co.*, 2007 U.S. Dist. LEXIS 23193, at *27-33 (W.D.N.Y. Mar. 29, 2007) (by intentionally retaining the benefits plaintiffs received in exchange for the releases, plaintiffs ratified the releases; in addition, plaintiffs' failure to tender back the consideration precluded them from arguing that the releases were voidable).

Indeed, Plaintiff has continued to reaffirm the validity and enforceability of the Settlement Agreement. Plaintiff, through the Union, recently arbitrated a claim before the American Arbitration Association in which he unsuccessfully alleged that the Hospital breached the terms of the Settlement Agreement by reinstating him as a Fire Safety Officer to the day shift, as opposed to the night shift. *See* Nhambiu Decl., ¶¶ 12-13, Ex. E, Ex. F (AAA Decision and Order of Arbitrator Howard C. Edelman) (rejecting Plaintiff's grievance and noting that the Settlement Agreement is clearly "the most important document in this case"); Def.'s 56.1 Statement, ¶¶ 15-17.

For the foregoing reasons, Plaintiff's Second Cause of Action should be dismissed, with prejudice, under Fed. R. Civ. P. 12(b)(6) or, in the alternative, Fed. R. Civ. P. 56, to the extent it alleges any violation of the NYLL arising on or before March 21, 2013, as

---

[4] Plaintiff characterizes his approximately 21-month absence from the Hospital as a "suspension" in the TAC. *See*, TAC, Ex. 2, p. 2.

Plaintiff previously released any such claims under the Settlement Agreement.

## POINT II

### PLAINTIFF'S ALLEGATION THAT HE WAS NEVER PAID OVERTIME UNDER THE NYLL PRIOR TO FEBRUARY 6, 2011 IS CONTRADICTED BY THE RECORDS ON WHICH PLAINTIFF RELIES AND SHOULD BE DISMISSED

In the Second Cause of Action, Plaintiff alleges that between February 17, 2008 and February 5, 2011,[5] he worked a total of 1,824 overtime hours, and that the Hospital failed to pay him overtime compensation for *any* of this time. *See* TAC, ¶¶ 40-42, Ex. 1. This allegation, however, is contradicted by the payroll records previously provided to Plaintiff and on which he otherwise relies in the TAC. The Hospital provided Plaintiff with his payroll records for the pay periods ending January 8, 2011 through October 25, 2014. *See* Repash Decl., Ex. A. Although apparently ignored by Plaintiff, these records include details for three pay periods ending *on or before* February 5, 2011 (namely, January 8, 2011, January 22, 2011 and February 5, 2011). *Id.*

As reflected on Exhibit A, Plaintiff was paid approximately $4,700.00 in overtime in these three pay periods. *Id.* Accordingly, Plaintiff's allegation that he never received any payment for overtime prior to February 6, 2011 is simply false. *See* TAC, ¶¶ 40-42. Indeed, Plaintiff's pay records demonstrate that he was, in some instances, paid for more overtime hours than he now claims entitlement. *Compare* TAC, Ex. 1 (alleging Plaintiff worked 32 uncompensated overtime hours in the two week period ending February 5, 2011) *with* Repash Decl., Ex. A (Plaintiff compensated for 32.43 overtime hours); *and* TAC, Ex., p. 1 (alleging Plaintiff worked 32 uncompensated overtime hours in the two week period ending January 8,

---

[5] Although Plaintiff expressly alleges that he was not paid any overtime compensation "between February 17, 2008 and January 30, 2011," *see* TAC, ¶¶ 40-42, Plaintiff instead appears to claim in the First Spreadsheet that he was not paid any overtime through the week ending February 5, 2011. *See* TAC, Ex., 1 (estimate of 1,824 uncompensated overtime hours includes alleged overtime hours worked through week ending February 5, 2011). *See also* TAC, Ex. 2 (spreadsheet begins with February 6, 2011).

2011) *with* Repash Decl., Ex. A (Plaintiff paid for 76.22 overtime hours).

It is well-settled that the Court, on a motion to dismiss, can consider documents either in a plaintiff's possession or on which he relied in bringing suit. *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Likewise, the Court can consider documents "integral to the preparation of the pleadings." *Miller v. Lazard Ltd.*, 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007). And "[i]f these documents contradict" the complaint's allegations, "the documents control" and the Court need not accept the complaint's misstatements as true. *Rapoport v. Asia Electronics Holding Co., Inc.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000). Here, Plaintiff's naked assertion that he was never paid overtime prior to February 6, 2011 is directly and flatly contradicted by the pay records on which he relies in the TAC. The Court should not accept this demonstrably false allegation as true. Likewise, the pay records simply cannot be reconciled with Plaintiff's allegation that the Hospital "ignored" his complaints and failed to pay him overtime. TAC, ¶¶ 26-27. *See DeBlasio v. Merrill Lynch & Co., Inc.*, 2009 U.S. Dist. LEXIS 64848, *81 (S.D.N.Y. July 27, 2009) ("because this broad contention sits in significant tension with Plaintiffs' other allegations in the SAC, the Court is not obligated to accept it as true"). Finally, as there is no other factual allegation in the TAC on which Plaintiff purports to base his NYLL overtime claims for the period February 17, 2008 through February 5, 2011, this portion of Plaintiff's Second Cause of Action (i.e., the claims reflected on the First Spreadsheet) should be dismissed in its entirety.

## POINT III

### PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION
### MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiff's First and Second Causes of Action for unpaid overtime in violation of the FLSA and NYLL, covering the period February 6, 2011 through February 15, 2014, fail to

state plausible claims for relief and must be dismissed for the reasons set forth below.

A.  Plaintiff Fails to Plausibly Allege that His Pre- and
    Post-Shift Activities Were Compensable

Plaintiff's allegation in the TAC that the Hospital failed to pay him overtime compensation for pre- and post-shift activities fails to state a plausible claim for relief and should be dismissed. At the outset, it is important to emphasize that Plaintiff does not expressly allege anywhere in the TAC that he ever performed uncompensated pre- and post-shift work. Rather, Plaintiff refers Defendant and the Court to his Spreadsheets and vaguely asserts that they "[set] forth [his] hours worked." One must review the Second Spreadsheet to discover this new theory of liability being alleged and to discern that it now forms the core of his post-February 2011 overtime claims under both the FLSA and NYLL. The Second Spreadsheet apparently purports to reflect that Plaintiff performed unpaid compensable work prior to and following almost every scheduled shift he worked from February 6, 2011 through February 15, 2014. *See, e.g.*, *TAC* ¶ 20, Ex 2, p. 3 (claiming entitlement to compensation for 2 minute difference between clock-in time and shift commencement, and 8 minute difference between shift end and clock out times, on Feb 11, 2014). In reality, Plaintiff has merely taken his time clock records that the Hospital provided to him for the period February 6, 2011 through February 15, 2014 and regurgitated the numbers on the Second Spreadsheet. He then compared those numbers against his actual payroll records for the same time period and, insofar as there was any discrepancy between the two documents running in Plaintiff's favor, counted the additional time as uncompensated hours worked.[6]

To state a plausible claim to recover unpaid overtime, a plaintiff must allege facts

---

[6] Despite his reliance on the Hospital's records, Plaintiff disregards portions of these documents that he finds disadvantageous to his position. *Compare, e.g.,* TAC, Ex. 2, p 2 (alleges payment of $1,915.55 for biweekly pay period ending June 22, 2013) *with* Repash Decl., Ex. A (Plaintiff received gross pay of $2,482.67).

showing that he performed 40 hours of compensable work in a given workweek, as well as compensable work in excess of the 40 hours. *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 88 (2d Cir. 2013); *see also Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013); *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 200 (2d Cir. 2013). Second Circuit precedent requires such claims to be accompanied by sufficient factual content and context to make the claim plausible, rather than a mere reiteration of the statutory language. *DeJesus* at 90.[7]

Here, Plaintiff makes no factual allegations that he performed pre- and post-shift work at any time. Comparing the allegations in the TAC, Ex. 2, to Plaintiff's pay records, Repash Decl., Ex. A, and time clock records, Repash Decl., Ex. B, it is plain that Plaintiff has simply identified minor discrepancies between the times he clocked in or out and his scheduled shifts, and assumes that this time is necessarily compensable. This is incorrect as a matter of law. *See*, *e.g.*, 29 C.F.R. § 785.48 ("where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work . . . early or late clock punching may be disregarded"); *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 519 (2014). Indeed, despite the Court's exhortation that Plaintiff is expected to recall "the types of tasks he performed during his overtime hours," Sept. 17, 2014 Mem. and Order at 18-19, Plaintiff has conspicuously omitted mention of any work that he actually performed during this pre- and post-shift time. *See generally*, TAC. As the First Circuit has explained, a bare allegation that an employee performed uncompensated "work" simply parrots the language of the FLSA and does not – by itself – give rise to an inference that an employee's time was, in fact, compensable:

---

[7] "[T]he [overtime] portions of New York Labor Law do not diverge from the requirements of the FLSA." *DeJesus*, 726 F.3d 85, n.5 (reasons for dismissing plaintiff's FLSA overtime claims "apply equally to the NYLL state claims").

> Arguably, once the complaint was amended to allege regular work by plaintiffs and others of more than 40 hours a week, it now described a mechanism by which the FLSA <u>may have been violated</u> as to those who worked through their lunches. But such persons could still have been properly compensated under the FLSA: in particular, various forms of "work" may not be not [*sic*] compensable. *See* 29 U.S.C. § 254(a) (non-"principal" preliminary or postliminary work not compensable); 29 C.F.R. §§ 785.27-785.32 (various types of training not compensable); *id.* § 785.47 (insignificant time beyond scheduled working hours not compensable). Yet even the amended complaint does not provide examples (let alone estimates as to the amounts) of such unpaid time for either plaintiff or describe the nature of the work performed during those times.

*Pruell v. Caritas Christi*, 678 F.3d 10, 14 (1st Cir. 2012) (emphasis in original); *compare Pruell* (plaintiffs insufficiently alleged that they "regularly worked over 40 hours a week and were not compensated for such time") *with Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 45-46 (1st Cir. 2013) (Plaintiff's factual allegations that they regularly assisted, monitored, and treated patients, answered phones, drafted correspondence, and filed paperwork during lunches and before and after their shifts fulfilled obligation to plead that they performed "compensable work" with sufficient specificity); *see also DeJesus*, at 89 (noting that the *Pruell* Court's "reasoning is persuasive"); *Lundy*, at 114 ("Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked *compensable* overtime in a workweek longer than 40 hours") (emphasis added).

Plaintiff also has not offered a single allegation to support an inference that his pre- and post-shift time at the Hospital was required or controlled by the Hospital, nor has he suggested that it provided any benefit to the Hospital whatsoever. *Gibbs v. City of New York*, 2015 U.S. Dist. LEXIS 7960, *19-21 (S.D.N.Y. Jan. 23, 2015) (to qualify as compensable "work," an "activity must be both 'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business,'" and not excluded from compensable

time by the Portal to Portal Act).    Indeed, the exact opposite appears to be the case here.   In 2012, for example, Plaintiff affirmed before an administrative tribunal that he was not at the Hospital and instead was performing personal business during a time period for which he now asserts an entitlement to compensation in the TAC.[8] *Compare* Repash Decl., Ex. C., *Matter of Craig Perkins*, N.Y. Unemployment Ins. App. Bd. ALJ Case No. 011-41597 (Mar. 28, 2012), *aff'd*, App. Bd. No. 564761 (Nov. 9, 2012) (Plaintiff affirmed that on June 3, 2011 he "arrived at work 20 minutes early" to obtain his paycheck and left the Hospital to deposit it, after obtaining coverage from a coworker) *with* TAC, Ex. 2, entry for June 3, 2011 (on the same day, claiming entitlement to pay for the entire time during which he was clocked in).

Plaintiff has clearly not pled any facts based on his memory and experience, as directed by the Court, but rather has – at best – merely identified minor discrepancies between his time clock records and shift start and end times, and offers his purported claims based on the speculative assumption that he *might* have performed compensable work during those periods. This plainly fails to state a plausible claim for unpaid overtime under the FLSA and NYLL.   As such, Plaintiff's claim to overtime compensation for the time during which he was clocked in before and after his scheduled shifts, as reflected on the Second Spreadsheet, does not plausibly state a claim for overtime and should be dismissed.

B.    Plaintiff's New Allegation that He Performed Uncompensated Pre- and Post-Shift Work Contradicts His Prior Pleadings and Should Be Disregarded

For the reasons set forth below, the Court should disregard Plaintiff's claim for pre- and post-shift time in the TAC.   Not only does Plaintiff never expressly allege in the TAC that he

---

[8] The Court may take judicial notice of facts not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Consequently, Defendant requests that the Court take judicial notice of Administrative Law Judge Lisa Schwartz's decision finding Plaintiff eligible for unemployment insurance benefits, to the extent it reflects the parties' statements before the Unemployment Insurance Appeals Board.

worked any uncompensated pre- and post-shift time or otherwise provide any plausible factual basis for this claim, but this new allegation is flatly contradicted by his prior pleadings in this case.

In the Exhibit to the SAC, Plaintiff alleged that he performed compensable work only during *uniform* eight- or sixteen-hour shifts at all times between February 2008 and September 2014. In the TAC, however, Plaintiff dramatically changes his story and now claims that on virtually every day he has worked since February 2011, he has performed compensable work from the moment he clocked in until the moment he clocked out, regardless of his actual shift start and end times and regardless of what his payroll records actually reflect. *Compare*, *e.g.*, SAC, Ex. 1, p.2 (claiming Plaintiff worked an 8-hour shift on Feb 11, 2014) with *TAC*, ¶ 20, Ex 2, p. 3 (claiming entitlement to compensation for 2 minute difference between clock-in time and shift commencement on Feb 11, 2014).

This new claim plainly and flatly contradicts Plaintiff's proffered "memory and experience," as alleged in the SAC, and should be disregarded by this Court. *See*, *e.g.*, *Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C., 2011 U.S. Dist. LEXIS 46867*, at **5-6 (E.D.N.Y. May 2, 2011) (declining to accept plaintiff's new allegations that conflicted with those in previous iterations of the complaint and granting defendant's Rule 12(b)(6) motion to dismiss amended complaint); *Dozier v. Deutsche Bank Trust Co. Ams.*, 2011 U.S. Dist. LEXIS 100467, at *5 (S.D.N.Y. Sept. 1, 2011) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint a court is authorized to accept the facts described in the original complaint as true.") (quoting *Colliton v. Cravath, Swaine & Moore LLP*, 2008 LEXIS 74388, at *19 (S.D.N.Y. Sept. 24, 2008)); *Green v. Niles*, No. 11 Civ. 1349 (PAE), 2012 U.S. Dist. LEXIS

40297, at *17 (S.D.N.Y. March 23, 2012). Plaintiff's reliance on his time clock records to allege actual hours worked is also directly contrary to prior assertions he made to this Court. Specifically, Plaintiff previously informed the Court that the Hospital's payroll records, not time clock records, would provide the precise amount of his actual hours worked. *See* Pl's Opp. to Def.'s Motion to Dismiss Am. Compl., Docket No. 37, p. 20 ("The precise amount of the plaintiff's rate of pay and hours he actually worked would be contained in the Hospital's payroll records…").

Unlike situations justifying conflicting pleadings, such as those where discovery yields information previously unknown to a Plaintiff, and the Plaintiff submits an inconsistent pleading or novel theory of the case on that basis, *see Palm Beach* at **17-18, here the information that Plaintiff would presumably purport to have "discovered" (*i.e.*, that he performed compensable "work" before or after his shifts) was fully and readily available to him prior to his submission of the SAC and examination of his time clock records. As the Court instructed Plaintiff upon dismissing his First Amended Complaint, Plaintiff "is reasonably expected to recall basic facts about his own work experience, such as when he worked overtime; *whether he came to work early, stayed late*, or took on additional shifts; approximately how many extra hours he worked per week; and the types of tasks he performed during his overtime hours." Sept. 17, 2014 Mem. and Order at 18-19 (emphasis added). In response to the Court's directive, Plaintiff filed the SAC in which he claimed, based on his "memory and experience," that he always worked eight- or sixteen-hour shifts from February 2008 through September 2014. *See* SAC, ¶ 20, Ex. 1. Plaintiff cannot credibly claim that information contained in his time clock records revealed that he was performing pre- and post-shift work; rather, this is a fact that Plaintiff is "expected to recall" even in the absence of these documents. Sept. 17, 2014 Mem. and Order at 18-19. Here,

Plaintiff has plainly contradicted his previously stated "memory and experience" in a transparent attempt to manufacture an overtime claim. Consequently, to the extent Plaintiff claims in the TAC, through the Second Spreadsheet, that the Hospital failed to pay him overtime compensation for pre- and post-shift activities in violation of the FLSA and NYLL, these allegations, which blatantly contradict the allegations in the SAC, should be disregarded by the Court.

C.   Plaintiff Fails to Plausibly Allege that His Meal Breaks Were Compensable

Similarly, Plaintiff's conclusory assertion that he is entitled to additional compensation under the FLSA and NYLL for every one of his meal breaks, without exception, is unaccompanied by sufficient factual content and context to render this claim plausible. Here, Plaintiff alleges only that he was "expected" to "eat lunch at his post while performing duties" and "is on duty" during his lunches. TAC, ¶ 18. Plaintiff utterly fails to allege even one task that he performed during a lunch break to support the conclusory allegation that his "duties" rendered his meal periods compensable. *See*, *e.g.*, *Ruffin v. MotorCity Casino*, 2015 U.S. App. LEXIS 236, at *7-15 (6th Cir. Jan. 7, 2015) (lunch breaks not compensable despite requirements that security guards carry and monitor radios for emergencies and remain on the premises); *Reich v. S. New Eng. Telecoms. Corp.*, 121 F.3d 58, 63-65 (2d Cir. 1997) ("meal periods are compensable under the FLSA when employees during a meal break perform duties *predominantly* for the benefit of the employer") (emphasis added); *see also Pruell v. Caritas Christi*, 678 F.3d 10, 14 (1st Cir. 2012) ("It is also telling that when the district court asked for more detail, plaintiffs' amendment offered the barest possible minimum—again with no detail as to either plaintiff"). Here, Plaintiff has not supplied any factual context to support an inference that the "duties" he allegedly performed or that the Hospital's request that he remain at his otherwise undescribed "post"

rendered his mealtime activities "predominantly for the benefit of" the Hospital or were otherwise compensable. Because Plaintiff's conclusory assertions that he was "on duty" and at his "post" during his lunches conspicuously avoid mention of any factual detail to support a plausible inference that this time was compensable, these claims under the FLSA and NYLL must be dismissed. *See Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009).

D.   Plaintiff's Has Not Pled a Cognizable "Gap Time" Claim

Plaintiff's First and Second Causes of Action must be dismissed to the extent that Plaintiff includes allegedly unpaid "gap-time" compensation—payable at the regular or straight time rate of pay—as part of his calculation of purported overtime damages. A "gap time" theory of recovery includes instances "in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours," such as when an employee seeks recovery for unpaid straight time lunch breaks. *See Lundy*, 711 F.3d at 115. Although Plaintiff does not request or otherwise assert an entitlement to unpaid straight time compensation in the TAC, *see generally* TAC, ¶¶ 28-48, in the Second Spreadsheet, Plaintiff incorporates pay for his straight time lunch breaks into the overtime compensation he is allegedly owed.[9] *Compare* TAC, Ex. 2 ("Total 2-week gross" and "Reg hours" and "Regular pay" columns allege entitlement to compensation inclusive of 80 straight time hours – or ten 8-hour shifts); *with* Repash Decl., Ex. A (showing that Plaintiff was typically paid for 75 straight time hours – or ten 7.5 hour-shifts – in each biweekly pay period) *and* TAC ¶ 18 (Plaintiff "was and is not paid" for any lunch breaks). By definition, overtime damages under the FLSA and NYLL do not include purported non-overtime (or straight time) hours worked. Consequently, the Court should dismiss Plaintiff's claims for unpaid overtime to the extent they include allegedly unpaid straight time hours.

---

[9] Plaintiff does not claim any entitlement to additional straight time pay for the period prior to February 6, 2011. *See* TAC ¶¶ 18, 40-44, Ex. 1 (calculating purported damages without consideration of straight time lunch breaks).

Further, even if Plaintiff is attempting to claim an entitlement to compensation for his straight-time lunch breaks, it is well established that "the FLSA does not provide a cause of action for unpaid gap time." *Nakahata at* 201 ("The FLSA is unavailing even when an employee works over 40 hours per week and claims gap-time wages for those hours worked under 40 per week . . . .") (*citing Lundy* at 116-17). Plaintiff appears to claim in the Second Spreadsheet that over $3,000 in unpaid "overtime" is due him for his straight-time lunch breaks. *See* TAC at ¶ 35, Ex. 2, p. 2, entry for June 14, 2013 (claims entitlement to straight time compensation for full shift, inclusive of lunch break), Ex. 2 (includes $65 – or 2.5 hours at $26 per hour – of gap time per week in "Regular pay" and "Total 2-week gross" allegedly owed for each week during which Plaintiff worked at least 5 straight time shifts between February 5, 2011 through February 15, 2014), TAC ¶ 18 (Plaintiff "was and is not paid" for lunch breaks). As such, to the extent Plaintiff is attempting to state a claim under the FLSA for uncompensated "gap-time" (based on this 2.5 hour difference in each weekly pay period), it is simply not cognizable and must be dismissed.

E.    Plaintiff's Third Amended Complaint Should Be Dismissed With Prejudice

In four separate complaints filed over the course of the past year, Plaintiff has had ample opportunity to investigate and develop a factual basis for his purported overtime claims. Nonetheless, and despite the Court's clear instructions to him on this issue, in the TAC Plaintiff offers only conclusory and self-contradictory claims, and yet again conspicuously omits any substantive factual allegations to support a plausible claim for unpaid overtime. In the latest iteration of his complaint, Plaintiff even goes so far as to leave his apparent theories of recovery unstated, instead shouldering the Court and the Hospital with the considerable burden of parsing the Spreadsheets attached to the TAC to ascertain what, exactly, Plaintiff is alleging. Given the

unreasonable expense and burden imposed on both the Hospital and the Court by Plaintiff's submissions, including the still clearly-deficient TAC, the Hospital requests that the Court dismiss Plaintiff's TAC with prejudice. *See*, *e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be denied for "repeated failure to cure deficiencies by amendments previously allowed"); *Finkel v. E.A. Techs., Inc.*, 2014 U.S. Dist. LEXIS 123616, **44-45 (E.D.N.Y. Sept. 3, 2014) (dismissing without leave to replead where, after two opportunities to amend, plaintiff "crafted a complaint rife with conclusory allegations and unsustainable claims that border on the frivolous"); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 71-72 (2d Cir. 1996) ("[W]e have also upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim.").

## CONCLUSION

For all of the foregoing reasons, the Hospital respectfully requests that this Court dismiss the TAC in its entirety and with prejudice, award Defendant its costs, including attorneys' fees, and such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      February 13, 2015

Respectfully submitted,

COLLAZO FLORENTINO & KEIL LLP
By: /s/ Philip F. Repash

Philip F. Repash
Nicholas R. Bauer
    747 Third Avenue
    New York, NY 10017
    (212) 758-7600
    (212) 758-7609

*Attorneys for Defendant*
Bronx-Lebanon Hospital Center