UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

CRAIG PERKINS,

                        Plaintiff,

              -v-

BRONX LEBANON HOSPITAL,

                      Defendant.

------------------------------------------------------------------X

14 Civ. 1681 (PAE)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/11/2015

PAUL A. ENGELMAYER, District Judge:

In his Third Amended Complaint ("TAC"), plaintiff Craig Perkins alleges that his employer, Bronx Lebanon Hospital (the "Hospital"), failed to pay him overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 663. This Court previously dismissed Perkins's overtime claims as pled in an earlier complaint but granted leave to amend; it also dismissed with prejudice various other claims asserted against the Hospital and Perkins's union.

The Hospital now moves to dismiss the TAC pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that it fails to state a claim upon which relief can be granted. In the alternative, the Hospital moves for partial summary judgment under Rule 56, claiming that its records establish that Perkins was paid for many of the overtime hours in question. For the following reasons, the Hospital's motions are denied, except that the Court dismisses Perkins's NYLL claim to the extent it is based on events occurring on or before March 21, 2013.

## I. Background

### A. Documents Considered

In resolving a motion to dismiss, the Court "may consider 'any written instrument attached to [the Complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)). In addition, "it is 'well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).'" *Burfeindt v. Postupack*, 509 F. App'x 65, 67 (2d Cir. 2013) (summary order) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)).

Under these principles, the Court may properly consider the tables attached to the TAC, which purport to document the hours Perkins worked and the wages he was paid. *See* Dkt. 61 ("TAC"), Exs. A–B.

The Hospital asks the Court to consider three documents attached to the Declaration of Philip Repash in support of the motion to dismiss, Dkt. 65 ("Repash Decl."), and six documents attached to the Declaration of Jasen Nhambiu in support of the same motion, Dkt. 66 ("Nhambiu Decl."). Exhibits A and B of the Repash Declaration consist of the Hospital's payroll records and time clock records, respectively. Plaintiff's counsel represents, however, that he did not rely on the documents attached to the Repash Declaration in drafting the TAC, but instead relied on "limited records" voluntarily produced by the Hospital. Dkt. 72 ("Pl. Br."), at 8, 11. Corroborating this claim, the pay periods in the tables attached to the TAC do not correspond to the pay periods in Exhibit A of the Repash Declaration. *Compare* TAC Ex. A, at 1, *with* Repash

Decl., Ex. 1, at 1. Accordingly, the Court cannot consider Exhibits A and B of the Repash Declaration in resolving the motion to dismiss.

Exhibit C of the Repash Declaration is a decision by an Administrative Law Judge ("ALJ") resolving Perkins's 2011 application for unemployment insurance benefits. Because this decision was publicly filed, the Court may consider it. *See Burfeindt*, 509 F. App'x at 67. The ALJ decision is, however, minimally relevant to the pending motion to dismiss.

Exhibits A through F of the Nhambiu Declaration pertain to Perkins's termination in August 2011, the grievances he filed thereafter, and the settlement agreement reached by the parties to resolve those grievances. Because Exhibits B and F, the settlement agreement and an arbitral decision, are matters of public record, the Court may consider them. *See id.* As to the balance of the exhibits, the Court can fairly assume that Perkins was aware of the documents when his counsel drafted the TAC. However, "mere notice or possession" of documents does not suffice; "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). There is no indication that Perkins relied on the documents labeled as Exhibits A, C, D, and E in drafting his pleadings, and so the Court may not consider them. *See id.* at 153–54.

Substantively, the six documents attached to the Nhambiu Declaration are relevant only insofar as they suggest that Perkins signed a binding settlement agreement releasing all claims against the Hospital that had accrued as of March 21, 2013, the date that the settlement agreement was executed. *See* Nhambiu Decl. ¶¶ 5–8. Because Perkins concedes this point, *see* Pl. Br. 5–6, the Court has no need to consider any of the documents.

Finally, Perkins asks the Court to consider an affidavit he submitted in opposition to the Hospital's motion to dismiss, which contains various new factual allegations and attaches as exhibits four sets of documents. Dkt. 71 ("Perkins Aff."). Of these, the Court may consider Exhibit A, a letter motion Perkins's counsel submitted to the Court via ECF on December 10, 2014. Dkt. 59. The Court may also consider page 4 of Exhibit C, a description of Perkins's job responsibilities that is explicitly incorporated into the TAC by reference. *See* TAC ¶ 11 ("[T]he description of the duties of the Fire Safety Officer job classification was and is contained in a manual published by the Hospital and known as the Bronx-Lebanon Hospital Center Safety and Security Manual."). However, because "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss," *Weir v. City of New York*, No. 05 Civ. 9268 (DFE), 2008 WL 3363129, at *9 (S.D.N.Y. Aug. 11, 2008) (citation omitted), the Court disregards the balance of the affidavit and its attachments.

**B.  Factual Background**[1]

On August 4, 2004, the Hospital hired Perkins as a Fire Safety Officer. TAC ¶ 7. His responsibilities include conducting fire and evacuation drills, selecting and training members of the fire brigade, and directing evacuations in the event of a fire. Perkins Aff., Ex. C, at 4. His regular wage rate is $26 per hour. *Id.* ¶ 16.

Starting in 2005, Perkins's supervisor began assigning Perkins the duties of a Cashier Officer—a separate position with different responsibilities—and informed Perkins that he was expected to simultaneously perform the duties of a Fire Safety Officer and a Cashier Officer. *Id.*

---

[1] As noted, these facts are drawn from the TAC and the tables attached thereto, Exhibit C of the Repash Declaration, and page 4 of Exhibit C of the Perkins Affidavit. In resolving the motion to dismiss, the Court assumes all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

¶¶ 13–15. Despite Perkins's increased duties, the Hospital has not increased his pay and continued to pay him only the wage rate for a Fire Safety Officer. *Id.* ¶¶ 16–17.

In approximately 2008, Perkins's supervisor informed him that he was no longer permitted to take a lunch break. *Id.* ¶ 18. Rather, Perkins is expected either to eat lunch at his job post while continuing his work or not to eat lunch at all. *Id.* Although Perkins has complied with that instruction and remains on duty during his lunch, the Hospital has not compensated Perkins for that time. *Id.*

Also beginning in 2008, Perkins's supervisors directed him to work more than 40 hours per week. *Id.* ¶ 19. Perkins alleges that he has not been fully compensated for all of the overtime hours he worked. *Id.* ¶¶ 19–25, Exs. A–B. For example, between August 19 and 31, 2013, Perkins worked a total of 152.18 hours, comprised of 80 regular hours and 72.18 overtime hours. *Id.* Ex. B, at 2. He therefore should have been paid $4,895.02: $2,080 for the first 80 hours and $2,815.02 in overtime wages. Because Perkins was actually paid only $4,468.80, the Hospital owes him a balance of $426.22. The unpaid overtime wages for other two-week pay periods range from $0 to just over $400 and average approximately $180. *See id.*

Perkins further alleges that he has repeatedly complained to his supervisors about his lack of lunch breaks and inadequate overtime compensation. *Id.* ¶ 26. Their failure to correct the problem is therefore, in his view, willful. *Id.* ¶ 36.

### C. Procedural History

On February 14, 2014, Perkins filed the original *pro se* Complaint in the New York Supreme Court in the Bronx. *See* Dkt. 1. That Complaint brought claims against the Hospital and against Perkins's union, 199 SEIU United Healthcare Workers East (the "Union"). On March 11, 2014, the Union removed the case to this Court. *Id.* The next day, the Hospital

5

consented to removal. Dkt. 4. On March 18, 2014, both the Hospital and the Union moved to dismiss. Dkt. 9, 13. In response, this Court issued an order granting Perkins leave to file an amended complaint. *See* Dkt. 17, 21.

On May 2, 2014, Perkins, through newly retained counsel, filed the First Amended Complaint ("FAC"), Dkt. 19, which brought six claims: two for breach of contract, two for breach of the Union's duty of fair representation, and two for failure to pay overtime compensation. FAC ¶¶ 36–80. On June 4, 2014, the Hospital moved to dismiss. Dkt. 28–29. On June 16, 2014, the Union did the same. Dkt. 33–35.

On September 17, 2014, after full briefing, the Court granted both motions to dismiss. Dkt. 41 ("Sept. 17 Opinion"); *reported at Perkins v. 199 SEIU United Healthcare Workers E.*, No. 14 Civ. 1681 (PAE), 2014 WL 4651951 (S.D.N.Y. Sept. 17, 2014). The Court held that the FAC failed to state a claim against the Hospital for breach of contract, or against the Union for breach of the duty of fair representation, and that those claims were, in any event, time-barred. *Id.* at 5–15. Accordingly, the Court dismissed those claims with prejudice. As to Perkins's overtime claims, the Court found that the FAC failed to state a claim because it contained only "vague legal conclusions" and did not "identify[] any specific week or time period in which Perkins worked overtime but was not lawfully paid for it." *Id.* at 16–17 (citing, *inter alia*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). However, the Court dismissed those claims without prejudice because the recitation of facts in the FAC was "so sparse" that the Court was unable to "assess whether Perkins could have stated a claim in a more thorough pleading." *Id.* at 19.

On October 28, 2014, Perkins filed the Second Amended Complaint ("SAC"), which asserts overtime compensation claims under the FLSA and NYLL. Dkt. 54. On December 10,

2014, Perkins's counsel informed the Court that the Hospital had voluntarily turned over certain wage records that cast doubt on the viability of Perkins's claims. Dkt. 59. At the parties' request, the Court granted a 45-day stay to permit Perkins's counsel to review the records in question. By the end of that period, Perkins was directed to notify the Court of his intention to proceed with the SAC, file a TAC, or voluntarily dismiss the case. Dkt. 60.

On January 26, 2015, Perkins filed the TAC, the current iteration of his complaint. Dkt. 61. The TAC brings the same claims as the SAC, but its allegations as to Perkins's hours and compensation are more detailed. Like the earlier complaints, the TAC seeks compensatory damages for Perkins's lost wages and benefits with interest, liquidated damages, attorneys' fees, and costs; it also seeks an order enjoining the Hospital from engaging in further wrongful conduct. *Id.* ¶¶ (1)–(5).

On February 13, 2015, the Hospital filed a motion to dismiss, or in the alternative for partial summary judgment, Dkt. 63, along with a memorandum of law, Dkt. 64 ("Def. Br."), and the two declarations discussed above, Dkt. 65–66. The Hospital argues there that the TAC's allegations are too general and conclusory to state a claim. Def. Br. 13–23. In the alternative, the Hospital challenges as meritless some of Perkins's claims of unpaid overtime wages based on its payroll and time-card records; it argues that it is entitled to summary judgment as to such pay periods. *Id.* at 12–13. On March 20, 2015, Perkins filed his opposition, including the affidavit discussed above. Dkt. 71 ("Pl. Br."), 72–74. On March 27, 2015, the Hospital submitted its reply. Dkt. 75 ("Def. Reply").

## II. Discussion

### A. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B. Failure to State a Claim

The FLSA requires that for all hours an employee works in excess of 40 hours per week, the employer pay overtime "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The NYLL is to the same effect.[2] "To plead a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and

---

[2] *See* N.Y. Lab. L. § 663; *see also Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 n.5 (2d Cir. 2013) ("In light of the fact that the relevant portions of New York Labor Law do not diverge from the requirements of the FLSA, our conclusions below about the FLSA allegations apply equally to the NYLL state law claims." (citations and alterations omitted)); *Lundy*, 711 F.3d at 118 (agreeing with the district court that "the same standard applie[s] to FLSA and NYLL claims"). For purposes of the ensuing analysis, the Court refers solely to the FLSA, but its analysis runs to both counts.

8

frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013); *see also Lundy*, 711 F.3d at 114 ("[A] plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (similar).

The gist of Perkins's claim is that the Hospital: (1) required him to continue working through his scheduled lunch breaks but did not compensate him for that time, *see* TAC ¶ 18, and (2) assigned him duties of two separate positions, Fire Safety Officer and Cashier Officer, and thereby directed him to work more than 40 hours per week, but failed to pay all of his overtime wages, *id.* ¶¶ 15, 17, 19, 21–25, Exs. A–B.

In its September 17, 2014 Opinion, the Court found that the FAC did not state a claim for unpaid overtime compensation because it did not "identify[] any specific week or time period in which Perkins worked overtime but was not lawfully paid for it." Sept. 17 Opinion, at 17 (citing, *inter alia*, *Lundy*, 711 F.3d at 114). The TAC has more than remedied this defect. In two tables that span a total of eight pages, the TAC identifies 27 distinct two-week pay periods in which Perkins allegedly worked more than 40 hours per week but was not fully paid for his overtime hours. *See* TAC, Exs. A–B. These periods fall between February 7, 2011 and February 15, 2014; the amounts of unpaid wages range from $49.44 to $426.35 for a single pay period.[3]

---

[3] For avoidance of doubt, such comprehensive calculations, although welcome, are not required at this early stage. Rather, as the Court explained, the Second Circuit's decision in *Lundy* obliges a plaintiff to sufficiently allege uncompensated time in a given workweek in which the employee worked more than 40 hours. *See Lundy*, 711 F.3d at 114. To do so, a plaintiff may "draw on [his] own 'memory and experience' to provide 'developed factual allegations,' . . . such as when he worked overtime; whether he came to work early, stayed late, or took on additional shifts; approximately how many extra hours he worked per week; and the types of tasks he performed during his overtime hours." Sept. 17 Opinion, at 18 (quoting *DeJesus*, 726 F.3d at 90). Prior to discovery, however, plaintiffs often will not be able to provide the precise tabular data recited in the TAC by Perkins, who was able to do so here only because the Hospital

To be sure, the TAC does not explain why Perkins worked so many overtime hours, or what tasks he completed during that time. But such detail is not required. The TAC states an FLSA—and a NYLL—claim against the Hospital for failure to pay Perkins the overtime compensation he was due. It alleges, in great detail, that Perkins completed "40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours," *Lundy*, 711 F.3d at 114, and it explains, in general terms, that Perkins's work during these hours had been as a Fire Safety Officer and a Cashier Officer. As pled, Perkins's unpaid meal breaks and pre- and post-shift hours were comprised of the same work as the hours for which he was compensated. *See* TAC ¶¶ 15 (Perkins "was expected simultaneously to perform all of the duties of both job classifications during all of his hours."), 18 (Perkins "was expected to either not take a lunch break, or to eat his lunch at his post while performing duties for his employer."). The TAC's allegations therefore suffice to give the Hospital "fair notice" of Perkins's claim and "the ground upon which it rests." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57 (2d Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). The "notice pleading standard of the Federal Rules of Civil Procedure" requires nothing more. *Id.*

The Hospital argues that Perkins may not have performed compensable work during his pre- and post-shift hours, *see* Def. Br. 15–17, 20–21; Repash Decl. Ex. C, and that he cannot recover for work performed during his lunch breaks because the FLSA does not provide a cause of action for unpaid gap time, *see* Def. Br. 21–22. Discovery may well vindicate these defenses. As pled, however, Perkins simultaneously performed the duties of a Fire Safety Officer and a Cashier Officer from the time he clocked in until the time he clocked out. *See* TAC ¶ 15. And depending on the hours worked in a given week, Perkins's lunch breaks may qualify as non-

voluntarily turned over certain records in hopes of resolving this case. Plaintiffs in future cases should not regard the tables included in the TAC as a pleading requirement.

compensable straight-time or as compensable overtime. *Id.* Exs. A–B. The Court cannot resolve those factual disputes at this stage. It must instead "draw all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145.

The Hospital also objects that certain allegations in the TAC contradict allegations in Perkins's prior pleadings. Def. Br. 17–20. The Hospital is correct that Perkins's theory of the case has shifted: The SAC alleged that Perkins worked an even eight or 16 hours per day and was not compensated for *any* hours he worked in excess of 40 hours per week. *See* Dkt. 54, at ¶¶ 29–31, 37–39, Ex. A. In contrast, the TAC pleads that Perkins's daily hours varied—eight hours and 10 minutes one day, 10 hours and 23 minutes the next—and that he was paid for some, but not all, of his overtime hours. *See* TAC ¶¶ 32–33, Ex. B. Perkins's core allegations, however, have remained the same: All complaints have alleged that Perkins worked significant overtime hours and was not fully compensated for them. And the differences between the TAC and the previous complaints, although giving the Court some pause, are understandable: After the SAC was filed, the Hospital voluntarily turned over certain payroll and time-card records to Perkins's counsel, who relied on those documents in drafting the TAC. Accordingly, rather than having to estimate hours worked based on Perkins's recollections and any records he may have retained, Perkins's counsel was able, for the first time, to plead Perkins's hours with precision. Notably, Perkins's counsel made the *responsible* decision to concede that the Hospital appears to have paid *some*, albeit not all, of the overtime wages Perkins had earned. Especially in light of Federal Rule of Civil Procedure 8(d)(2)–(3), which "permits pleading inconsistent theories in the alternative," the inconsistencies across Perkins's complaints do not provide a basis for dismissing the TAC. *Benefield v. Pfizer Inc.*, No. 14 Civ. 3394 (JPO), 2015 WL 1958929, at *8

(S.D.N.Y. May 1, 2015) (quoting *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49, 55 n.3 (2d Cir. 2004)).

Finally, the Hospital argues that Perkins's NYLL claim must be dismissed to the extent that cause of action arose on or before March 21, 2013. On that point, the Hospital is correct. Pursuant to a settlement agreement the parties entered in a separate arbitration proceeding, Perkins released all claims that had accrued against the Hospital as of that date. Def. Br. 8–11; *see also* Nhambui Decl., Ex. B (settlement agreement). In fact, Perkins concedes that the prior settlement agreement bars part of his NYLL claim, and states that he seeks to recover damages only for claims arising after March 21, 2013. Pl. Br. 5–6. Accordingly, the Court sustains the TAC's NYLL claim only as to that later time period.[4]

### C. Summary Judgment

In the alternative, the Hospital moves for partial summary judgment, arguing that the employment records attached to the Repash Declaration prove that Perkins received all due compensation during many pay periods. Def. Br. 12–13. Where a plaintiff has not had an adequate opportunity to conduct discovery, however, a grant of summary judgment to the defendant is premature and inappropriate. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003); *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 98 (2d Cir. 2000). The Hospital's motion for partial summary judgment is therefore denied without prejudice to renewal following the close of discovery.

---

[4] It appears to the Court that the same agreement would logically bar Perkins's FLSA claims that arose on or before March 21, 2013. The parties do not, however, explicitly address this point. The Court invites them to do so.

## CONCLUSION

For the foregoing reasons, the Hospital's motion to dismiss, or in the alternative for partial summary judgment, is denied. However, Perkins's NYLL claim is barred to the extent it pertains to the time period up to and including March 21, 2013.

The Clerk of Court is directed to terminate the motion pending at docket number 63.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: June 11, 2015
       New York, New York