UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CRAIG PERKINS,

                              Plaintiff,

            -against-                                    14-CV-1681 (JCF)

1199SEIU UNITED HEALTHCARE WORKERS EAST
and BRONX-LEBANON HOSPITAL CENTER,

                              Defendants.
------------------------------------------------------------------X


**DEFENDANT BRONX-LEBANON HOSPITAL CENTER'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**


COLLAZO FLORENTINO & KEIL LLP
Philip F.  Repash
Nicholas R. Bauer
747 Third Avenue
New York, NY  10017

Attorneys for Defendant Bronx-Lebanon
Hospital Center

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

Preliminary Statement ..................................................................................................... 1

Statement of Facts .......................................................................................................... 2

Applicable Legal Standard ............................................................................................. 7

Argument

I.  THE MINIMAL RESTRICTIONS ON
    PLAINTIFF'S MEAL BREAKS DO NOT
    RENDER THIS TIME COMPENSABLE ................................................................. 7

II. PLAINTIFF'S FAILURE TO FOLLOW HOSPITAL
    POLICY FOR REPORTING INTERRUPTED MEAL BREAKS
    PRECLUDES HIS CLAIM ..................................................................................... 19

Conclusion ..................................................................................................................... 23

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Aamold v. United States*, 39 Fed. Cl. 735 (Fed. Cl. 1997)..........................................................15

*Agner v. United  States*, 8 Cl. Ct. 635 (1985) ...............................................................11, 12, 13

*Alexander v. City of Chicago*, 994 F.2d 333 (7th Cir. 1993)........................................................18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..................................................................7

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)..........................................................8

*Avery v. City of Talladega*, 24 F.3d 1337 (11th Cir. 1994) ........................................................12

*Babcock v. Butler County*, 806 F.3d 153 (3d Cir. 2015) ...................................................... *passim*

*Babcock v. Butler County*, 2014 U.S. Dist. LEXIS 22170 (W.D.P.A. Feb. 21, 2014)...........11, 16

*Baylor v. United States*, 198 Ct. Cl. 331 (1972) .......................................................................11

*Beasley v. Hillcrest Med. Ctr.*, 78 F. App'x 67 (10th Cir. 2003)..................................................18

*Berger v. Cleveland Clinic Found.*, 2007 U.S. Dist. LEXIS 76593
      (N.D. Ohio Sept. 19 2007)..................................................................................................12

*Bernard v. IBP, Inc.*, 154 F.3d 259 (5th Cir.1998) ....................................................................18

*Bridges v. Amoco Polymers, Inc.*, 19 F. Supp. 2d 1375 (S.D. Ga. 1997) ....................................12

*Brown v. Howard Indus.*, 116 F. Supp. 2d 764 (S.D. Miss. 2000) ..............................................11

*Browne v. IHOP*, 2005 U.S. Dist. LEXIS 48129 (E.D.N.Y Aug. 2, 2005)....................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................................7

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. N.Y. 2008)..............................................19

*DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85 (2d Cir. 2013)............................................................9

*DeSilva v. N. Shore-Long Island Jewish Health Sys.*,
      27 F. Supp. 3d 313 (E.D.N.Y. 2014) .......................................................................19, 20

*Ellis v. Common Wealth Worldwide Chaueffuered Transp. of NY, LLC,*
  2012 U.S. Dist. LEXIS 40288 (E.D.N.Y. March 23, 2012) ................................19, 20, 22

*Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413 (9th Cir. 1981) ....................................23

*Forrester v. Roth's I.G.A. Foodliner, Inc.,* 475 F. Supp. 630 (D. Or. 1979) .........................22, 23

*Gordon v. Kaleida Health,* 299 F.R.D. 380 (W.D.N.Y. 2014) ................................................19, 20

*Harvill v. Westward Communications, L.L.C.,* 433 F.3d 428 (5th Cir. 2005) ..............................15

*Haviland v. Catholic Health Initiatives,* 729 F. Supp. 2d 1038 (S.D. Iowa 2010) ............... *passim*

*Hertz v. Woodbury Cnty.,* 566 F.3d 775 (8th Cir. 2009) ...................................................................8

*In re Chicago Police Dep't F.L.S.A. Meal Period Litigation,*
  1995 U.S. Dist. LEXIS 4006, (N.D. Ill. March 28, 1995) .................................................12

*Kaczmerak v.  Mt. Sinai Med. Ctr.,* 1988 U.S. Dist. LEXIS 18680  (E.D. Wis. Feb. 24, 1988) ...11

*Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9 (2d Cir. 1986) .....................................................................7

*Kulak v. City of New York,* 88 F.2d 63 (2d Cir. 1996) ......................................................................7

*Local 889, AFSCME v. Louisiana ex rel. Dep't of*
  *Health & Hosps.,* 145 F.3d 28 (5th Cir. 1998) .................................................................18

*Marti v. Grey Eagle Dist., Inc.,* 937 F.Supp. 845 (E.D. Mo. 1996)...................................11, 12, 15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ..............................7

*Mendez v. Radec Corp.,* 232 F.R.D. 78 (W.D.N.Y. 2005) .........................................................9, 13

*Reich v. S. New Eng. Telecoms. Corp.,* 121 F.3d 58 (2d Cir. 1997)...................................8, 17, 18

*Reich v. S. New Eng. Telecoms. Corp.,* 892 F. Supp. 389 (D. Conn. 1995) ...........................17, 18

*Ruffin v. MotorCity Casino,* 775 F.3d 807 (6th Cir. 2015) ................................................... *passim*

*Simmons v. Wal-Mart Associates, Inc.,* 2005 U.S. Dist. LEXIS 21772
  (S.D. Ohio July 19, 2005) .................................................................................................15

*Singh v. City of New York,* 418 F. Supp. 2d 390 (S.D.N.Y. 2005) ...........................................8, 19

*Skidmore v. Swift,* 323 U.S. 134 (1944) .........................................................................................16

*White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012) ...................................20

*Wilson v. City of Chicago*, 2004 U.S. Dist. LEXIS 18833 (N.D. Ill. Sept. 20, 2004)  ................15

*Wood v. Mid-America Mgmt. Corp.*, 192 Fed. Appx. 378 (6th Cir 2006)....................................22

Statutes

29 U.S.C. 201 *et seq.* ............................................................................................... *passim*

Regulations

29 C.F.R. § 785.19 ...............................................................................................8, 12, 13, 15

29 C.F.R. § 785.11 ...........................................................................................................19

N.Y.C.R.R. § 142-3.2 ................................................................................................ *passim*

Rules

Fed. R. Civ. P. 56...............................................................................................................2

Opinion Letters

Wage and Hour Opinion Letter, Fair Labor Standards Act, U.S. Dep't of Labor,
    1997 DOLWH LEXIS 12, at **1-3 (Feb. 12, 1997) ...................................................15, 16

Wage and Hour Opinion Letter, Fair Labor Standards Act, U.S. Dep't of Labor,
    FLSA2004-7NA, 2004 DOLWH LEXIS 24, at **1-3 (Aug. 6, 2004).............................16

**Preliminary Statement**

For purposes of this motion, the parties have submitted a stipulation of uncontested facts and legal issues (the "Stipulation").  (Dkt. No. 99, Exhibit 1).[1]  Pursuant to the Stipulation, Plaintiff Craig Perkins ("Plaintiff") and Defendant Bronx-Lebanon Hospital Center (the "Hospital" or "Defendant") agree that the sole remaining claim in this lawsuit is whether the Hospital unlawfully failed to pay Plaintiff overtime compensation for certain meal breaks in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (Joint Stipulation ¶1).

The question before the Court is whether Plaintiff's 30-minute meal breaks during his overtime shifts at the Hospital's Grand Concourse location ("Grand Concourse") were non-compensable as a matter of law.  As explained below, Plaintiff's meal break overtime claim is not supportable and should be dismissed for the following reasons.  First, Plaintiff cannot show that his meal breaks were predominantly for the benefit of the Hospital, as required by Second Circuit precedent. The minimal restraints on his activities during his meal breaks do not convert these otherwise duty-free periods into compensable "work" under the FLSA or NYLL. Moreover, Plaintiff has not identified any specific occasions on which his meal breaks were actually interrupted or wholly missed. Even if one or more of Plaintiff's meal breaks had been interrupted, his claim would still fail because he has no evidence that he followed the Hospital's reasonable procedure for reporting missed meal breaks. Accordingly, his claim for overtime compensation presents no triable issue of fact, and the Hospital is entitled to judgment as a matter of law.

---

[1] Citations to the Parties' Stipulation Concerning Remaining Claims and Uncontested Facts dated July 1, 2016 (Dkt. No. 99, Ex. 1) are indicated herein as "Joint Stipulation ¶__" and attached to Defendant's Statement of Material Facts Pursuant to Local Rule 56.1 as Exhibit 5 for the Court's convenience.

The parties further agree that any constraints on Plaintiff's meal break activities at other Hospital sites involved either the same or lesser restrictions as those he experienced at Grand Concourse. (Joint Stipulation ¶13).  Because Plaintiff's meal breaks at Grand Concourse were not compensable, it follows that his meal breaks at all other sites were also not compensable, and the Third Amended Complaint should be dismissed in its entirety.

Accordingly, the Hospital is entitled to summary judgment of Plaintiff's Third Amended Complaint under Fed. R. Civ. P. 56.

### Statement of Facts

Plaintiff was hired by the Hospital as a Safety Officer on August 2, 2004 and was employed in this capacity at all relevant times. (Defendant's Statement of Material Facts Pursuant to Local Rule 56.1 ("56.1") ¶1).  Throughout the relevant period—(i.e., May 20, 2013 to the present)—the terms and conditions of Plaintiff's employment have been governed by a series of collective bargaining agreements ("CBAs") between the Hospital and the Union representing him, 1199SEIU United Healthcare Workers East ("1199" or the "Union"). (56.1 ¶1; Joint Stipulation ¶3). The CBAs require that any Safety Officer who works an 8-hour shift receive one unpaid 30-minute meal break and two 15-minute rest periods. *Id*. Under the CBAs, Plaintiff is entitled to overtime compensation for any hours worked in excess of 37.5 in a given week, or any hours worked in excess of 7.5 on a given day.[2] *Id*.

Safety Officers work in the Hospital's Safety Department. (56.1 ¶2). Plaintiff is supervised by Safety Manager Fifi DuBois who, among other functions, schedules Safety Officers' shifts and approves their time records for processing by the Hospital's payroll

---

[2] Although the CBAs provide for overtime pay for work in excess of 37.5 hours in a given week, and for hours worked in excess of 7.5 on a given day, these contractual overtime claims under the CBAs are no longer at issue in this litigation, as Plaintiff's claim for breach of contract in his First Amended Complaint was dismissed by the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 17, 2014. *See* Dkt. Entry 41.

department. (56.1 ¶¶3-4).  Plaintiff and Ms. DuBois report to Director of Safety Elroy Fields, and

Mr. Fields in turn reports to Assistant Vice President for Support Services and Operations, James

Dunne. (56.1 ¶¶5-6).

As a Safety Officer, Plaintiff is principally assigned to work at one of two Hospital

locations: the Grand Concourse building or the Fulton/Franklin Division ("Fulton"). (56.1 ¶7).

Plaintiff may also be assigned to other Hospital locations known as "Offsite" locations. (56.1

¶8).  The Hospital assigns one Safety Officer to Grand Concourse per shift. (56.1 ¶9). There are

three daily shifts: 8 a.m. to 4 p.m. (the "day shift"); 4 p.m. to 12 a.m. (the "evening shift"); and

12 a.m. to 8 a.m. (the "night shift"). (56.1 ¶10).  Pursuant to its interpretation of New York City

Local Law 5, the Hospital requires at least one individual certified by the New York City Fire

Department ("Fire Department") as a Fire Safety Director to remain on or about the premises of

Grand Concourse at all times to monitor and provide assistance in the event of an alarm

activation or other emergency. (56.1 ¶11; Decl. of Jasen Nhambiu, dated July 15, 2016

("Nhambiu Decl."), Ex. A, Ex. B).  Plaintiff is a certified Fire Safety Director. (56.1 ¶12).

Safety Officers use biometric fingerprint-scanning time clocks known as "Kronos" to

register their arrival and departure times before and after their shifts. (56.1 ¶13).  Plaintiff is not

required to clock out and clock in at the beginning and end of his meal breaks; rather, a half hour

is automatically deducted for meal breaks unless the Hospital receives notice that Plaintiff's

break was interrupted and he was unable to replace it with a later break. (56.1 ¶14).

When assigned to Grand Concourse, Plaintiff's primary work location is the Fire

Command Station, which contains a "fire alarm control panel" (also referred to as a "fire panel"

or "fire alarm panel") that indicates any fire alarm activations in the building.  (56.1 ¶¶15-16).

The fire panel also displays non-emergency "trouble signals," i.e., malfunctions or other

problems with the Hospital's fire suppression systems anywhere within or around the building. (56.1 ¶16).  The Fire Command Station is located on the second floor of Grand Concourse. (56.1 ¶17).  When stationed at the Fire Command Station, Plaintiff monitors the fire panel for alarm activations or trouble signals (DuBois Dep. at 28:16-29:5; Pl.'s Dep. at 57:7-58:21; Fields Dep. at 24:12-25),[3] fields phone calls or other requests (Fields Dep. at 59:3-60:19; DuBois Dep. at 21:13-22), and provides other assistance required of his position. (Pl.'s Dep. at 66:25-67:24; 69:17-70:5) (56.1 ¶18).

During a given shift, Plaintiff's duties routinely require him to leave the Fire Command Station. (56.1 ¶19).  For example, Plaintiff regularly performs rounds of the Hospital's premises to identify hazards or fire safety issues (Pl.'s Dep. at 36:11-37:22); conducts fire and emergency drills (Pl.'s Dep. at 40:3-19, 160:7-10); tests fire alarm systems (Pl.'s Dep. at 39:5-17); provides safety training to contractors working on the Hospital's premises (Pl.'s Dep. at 40:20-42:8); and inspects various Hospital life safety systems and devices around the premises, including smoke detectors, pull boxes, fire extinguishers, egress areas, fire safety doors (Pl.'s Dep. at 37:4-14), Fire Department connections, and standpipe connections (Fields Dep. at 26:12-27:5). (56.1 ¶19). When working at Grand Concourse after business hours (between 5:00 PM and 9:00 AM on weekdays, and on weekends), Plaintiff is also responsible for assisting Security Officers in depositing and retrieving patient valuables from the Hospital Cashier's Office. (DuBois Dep. at 19:10-22:04; Pl.'s Dep. at 29:13-30:12).  In all of these cases, Plaintiff's duties require him to perform work away from the Fire Command Station, and some of these duties are performed outdoors on Hospital premises. (56.1 ¶¶19-20).

---

[3] Citations to pages from the transcribed deposition testimony of plaintiff Craig Perkins on April 21, 2016 are indicated herein by "Pl.'s Dep.   __" and attached to Defendant's Statement of Material Facts Pursuant to Local Rule 56.1 as Exhibit ("Ex.") 1; Fifi Dubois on March 3, 2016 ("Dubois Dep.   __") as Ex. 2; Elroy Fields on March 4, 2016 ("Fields Dep.   ___") as Ex. 3; James Dunne on March 17, 2016 ("Dunne Dep.   ___") as Ex. 4.

Hospital policy requires Plaintiff to record his work activities in logbooks kept in the Fire Command Station (for brevity, "Fire Command logbooks," "logbooks," or the "logbook") (56.1 ¶21).  Plaintiff testified that he could not recall any duties he performs as a Safety Officer that he does not record in the logbooks. (56.1 ¶22).

There are some limited restrictions on Plaintiff's meal breaks. When Plaintiff works at Grand Concourse, he is required to carry his radio, cell phone, and/or Fire Command pager with him. (56.1 ¶23).  Prior to leaving the Fire Command Station for a meal break, Plaintiff is required to notify the Security Department, the Telecommunications Department, and the Engineering Department so he can be contacted in an emergency. (56.1 ¶24).  When Plaintiff is away from the Fire Command Station, he learns of emergency alarm activations in the building through the overhead alarms and speaker-strobes located throughout the building. (56.1 ¶25). These alarms and strobes may also be audible and visible outside along the building perimeter. *Id.*  Plaintiff may also receive notice of emergencies requiring his attention via cell phone, radio, or pager. (56.1 ¶26).

The Hospital requires Plaintiff to stay on the Grand Concourse premises during his meal breaks. (56.1 ¶27).  Plaintiff's meal breaks may occasionally be interrupted due to an emergency radio call or a fire alarm. (56.1 ¶28).  In such cases, Plaintiff must return to the Fire Command Station. *Id.*  If a meal period were interrupted, Safety Officers are expected to record the interruption in the Fire Command logbook. (56.1 ¶29).  Plaintiff testified that he is not generally made aware of non-emergency situations while he is away from the Fire Command Station and that he is "very seldom" contacted by radio during his shifts at Grand Concourse. (56.1 ¶¶30-31).

Despite these minimal constraints, Plaintiff has wide discretion to schedule his own meal breaks, and to decide where he wishes to spend his meal time on the Grand Concourse premises.

(56.1 ¶32).  Although Plaintiff is not permitted to take a meal break during the first or last half hour of a shift, he may otherwise take a meal break at any time during the shift. (56.1 ¶35).  During his meal breaks, Plaintiff is permitted to engage in any number of activities at his discretion. (56.1 ¶32).  For example, Plaintiff may eat and drink, use his cell phone to make personal phone calls, send text messages, surf the internet, send personal emails, and read books and magazines for his own pleasure. (56.1 ¶33).  Plaintiff may spend his meal breaks where he wishes on the Grand Concourse premises, including in the Hospital's on-premises café called the Grand Café, or in one of the Hospital's various lounges located throughout the Grand Concourse's 19 floors. (56.1 ¶34).  Plaintiff may even spend his meal break on the roof of the building if he so chooses. (56.1 ¶34).

In the event that an emergency interrupts Plaintiff's meal break, Hospital policy requires him to either take a subsequent, uninterrupted meal break at some point during the remainder of his shift, or to note the interruption in the logbook and notify his supervisor so he can be paid for the time. (56.1 ¶36).  Plaintiff was aware of this policy, but the Safety Department has no record of Plaintiff ever providing notice of any interrupted or missed meal break in accordance with this policy during the relevant period, nor could Plaintiff recall any specific instance in which he notified a supervisor under this procedure. (56.1 ¶¶38-40).

Since at least 2007, Plaintiff has routinely recorded the phrase "no lunch or break," "no relief for lunch," "no lunch," or other similar notations in the Fire Command logbooks. (56.1 ¶41).  Plaintiff has stipulated that what he means by these notations is that he believes his meal breaks are not "*bona fide*" meal breaks in light of the foregoing restrictions. *Id.*

**Applicable Legal Standard**

Summary judgment disposes of meritless claims to spare parties and the courts a frivolous and costly trial. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), *aff'd* 480 U.S. 932 (1987).  Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  To survive summary judgment, a plaintiff must present admissible evidence, rather than conclusions, speculation, or guesswork. *Anderson,* 477 U.S. at 248-52.  Summary judgment must be granted unless a plaintiff presents "concrete particulars" to substantiate his claim, and so presenting a genuine issue of material fact for trial. *See Matsushita Elec. Indus. Co.. Ltd.*, 475 U.S. at 586; *Kulak v. City of New York*, 88 F.2d 63, 70 (2d Cir. 1996).

**Argument**

**Point I**

**THE MINIMAL RESTRICTIONS ON PLAINTIFF'S
MEAL BREAKS DO NOT RENDER THIS TIME COMPENSABLE**

Plaintiff argues that his meal breaks are compensable under the FLSA and NYLL because he must remain on the premises during his meal breaks; he must carry his radio with him; and his meal breaks *could* be interrupted due to an emergency.  However, merely requiring an employee to carry a radio, remain on the employer's premises, and be available to respond in

the event of an emergency does not make a meal break compensable. *See*, *e.g.*, *Ruffin v. MotorCity Casino*, 775 F.3d 807 (6th Cir. 2015); *Babcock v. Butler County*, 806 F.3d 153 (3d Cir. 2015); *Haviland v. Catholic Health Initiatives,* 729 F. Supp. 2d 1038 (S.D. Iowa 2010).

In the Second Circuit, the trial judge is responsible for determining as a matter of law whether plaintiff's activities could potentially constitute "work" as defined by the FLSA. *Singh v. City of New York*, 418 F. Supp. 2d 390, 397 (S.D.N.Y. 2005), *aff'd* 524 F.3d 361 (2nd Cir. 2008).[4] Most Circuits, including the Second, decide whether meal breaks are compensable under the FLSA with a "predominant benefit" test. Under this test, the court, considering all the facts and circumstances, determines whether the meal break is predominantly for the benefit of the employer or the employee. *See, e.g., Reich v. S. New Eng. Telecoms. Corp.*, 121 F.3d 58, 63-65 (2d Cir. 1997) (rejecting the "completely relieved from duty" standard of 29 C.F.R. § 785.19(a) and adopting the "predominant benefit" test). It is the employee's burden to prove that a meal period is compensable. *See*, *e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *Reich*, 121 F.3d at 67-68; *see also Ruffin v. MotorCity Casino*, 775 F.3d 807, 811 (6th Cir. 2015); *Hertz v. Woodbury Cnty.*, 566 F.3d 775, 783-84 (8th Cir. 2009) (requiring employer to prove "that an employee was not performing 'work' during a time reserved for meals would perversely incentivize employers to keep closer tabs on employees during their off-duty time").

The factors considered relevant to whether an employee's meal breaks are predominantly for the benefit of the employer include: the limitations and restrictions placed upon the employees, the extent to which those restrictions benefit the employer, the employee's duties

---

[4] In addition, "[a]fter the court defines 'work' as a matter of law, the fact finder determines 'not only how much of plaintiff's time falls within the court's definition of 'work' and would be compensable, but also how much of that time was spent with the employers actual or constructive knowledge.'" *Singh*, 418 F. Supp. 2d at 397 (internal alteration omitted). In this case, however, it is clear that the restrictions Plaintiff has alleged render his time non-compensable as a matter of law and, as such, no reasonable jury could find that any of Plaintiff's meal breaks were compensable.

during the meal period, the frequency of meal period interruptions, and whether employees are allowed to resume an interrupted break. *See Haviland v. Catholic Health Initiatives,* 729 F. Supp. 2d 1038, 1061 (S.D. Iowa 2010).  The analysis under the FLSA and NYLL is the same. *See, e.g., DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, n.5 (2d Cir. 2013) ("[T]he [overtime] portions of New York Labor Law do not diverge from the requirements of the FLSA."); *Mendez v. Radec Corp.*, 232 F.R.D. 78, 83 (W.D.N.Y. 2005) (analyzing FLSA and NYLL claims for unpaid lunch breaks under the "predominant benefit" standard).[5]

In *Ruffin*, the Sixth Circuit considered whether casino security guards' 30-minute meal breaks were compensable under the FLSA.  The security guards could not leave casino property, were required to carry and monitor their radios during lunch breaks, and were required to respond to emergency calls. *Ruffin*, 775 F.3d at 809-810.  The guards generally spent their meal period in a large cafeteria or one of several smaller break rooms, where they could "eat, drink, socialize with other [casino] employees, use their cell phones, utilize the internet, watch the TVs installed in the cafeteria and various break rooms, read, use the company provided computers in the cafeteria, [and] play cards and other games," or they could use an outdoor smoking area or walk around the outside of the Casino premises. *Id.*  In concluding that the guards' lunch breaks were not compensable as a matter of law, the Court noted that the guards could "adequately and comfortably" spend their meal periods for their own purposes despite requirements that they remain on premises, monitor a radio, and be available to respond to emergencies. *Id.* at 814-15.

A number of other courts have reached the same conclusion.  *Haviland v. Catholic Health Initiatives*, 729 F. Supp. 2d 1038 (S.D. Iowa 2010), offers particular guidance, as it concerned private security officers employed at three hospital facilities. *Haviland*, 729 F. Supp.

---

[5] Although the NYLL *requires* employers to provide employees with meal breaks, and the FLSA does not, this statutory provision does not provide a private right of action. *Browne v. IHOP*, 2005 U.S. Dist. LEXIS 48129, at **2-3 (E.D.N.Y Aug. 2, 2005).

at 1040-41. The security officers were given 30-minute breaks, but argued that they should have been paid for breaks during shifts with only one officer on duty because they were not permitted to leave the hospital premises to which they were assigned; they were required to keep radios on and respond to situations that arose; and they provided the service of being a "presence" while on break. *Id.* at 1059-60.  The court denied the officers' claims.

During their breaks, the security officers in *Haviland* were able to go to an office, squad room, or break room, and could make phone calls, study, eat, sleep, or access personal e-mail, websites, and shop online. *Id.* at 1068-71.  Citing extensive precedent, the court concluded that the plaintiffs could not show that their lunch breaks were compensable, and that carrying and monitoring a radio, being confined to the premises, and being required to respond to emergency situations, were insufficient to convert meal time to compensable work time under the FLSA. *Id.* at 1061-63.  Although the employer hospital received some benefit from the plaintiffs' on-site presence during the breaks, this was not determinative. *Id.* at 1059.  Rather, considering the totality of the circumstances, the court held that a reasonable jury could not "conclude that [the plaintiffs] were . . . acting for the predominant benefit of [the employer] during their lunch periods merely because they were required to remain on site, carry a radio, and respond to emergencies if they arose." *Id.* at 1070.

More recently, the Third Circuit, in *Babcock v. Butler County*, 806 F.3d 153 (3d Cir. 2015), affirmed dismissal under Fed. R. Civ. P. 12(b)(6) of a putative class action where prison corrections officers claimed compensation for their lunch breaks because they could not leave the prison without permission.  The plaintiffs were required to remain in uniform and in close proximity to emergency response equipment, were on call to respond to emergencies, and were expected to respond "immediately in person, in uniform, and with appropriate response

10

equipment" in the event of an emergency. *Babcock*, 806 F.3d at 155, 158. They alleged that, because of these restrictions, they could not "run personal errands, sleep, breathe fresh air, or smoke cigarettes during mealtime." *Id.* at 155. The plaintiffs further asserted that the defendant imposed these restrictions so that it could "include these corrections officers in their calculation of a safe inmate-to corrections-officers ratio." *Babcock v. Butler County*, 2014 U.S. Dist. LEXIS 22170, at **17-18, 25-26 (W.D.P.A. Feb. 21, 2014), *aff'd* 806 F.3d 153 (3d Cir. 2015). The Third Circuit affirmed dismissal of the complaint. Even accepting the officers' allegations as true, the Third Circuit concluded that the correction officers' meal periods were not predominantly for the benefit of the prison and thus did not state a plausible claim that the meal periods were compensable. *Id.* at 157-58.

Requiring employees to remain on the employer's premises during a meal break does not, by itself, render such time compensable. *See, e.g.*, *Agner v. United States*, 8 Cl. Ct. 635, 638 (1985) ("The mere fact that an employee is required to eat lunch on the employer's premises and to be on a duty status, subject to emergency call during such period, does not convert [breaks] into compensable time") (quotations and citations omitted); *Baylor v. United States*, 198 Ct. Cl. 331, 364 (1972) (same); *Brown v. Howard Indus.*, 116 F. Supp. 2d 764, 766-767 (S.D. Miss. 2000) ("The Court . . . has not found a single case in which a court held a lunch break compensable simply because the employees were required to stay on their employer's premises during that break."); *Kaczmerak v. Mt. Sinai Med. Ctr.*, 1988 U.S. Dist. LEXIS 18680, **4-7 (E.D. Wis. Feb. 24, 1988) (security officer meal periods not compensable when plaintiffs "were required to remain on the premises, keep their radios on, and respond to 'all -- units' emergency assignments during their lunch period."); *Marti v. Grey Eagle Dist., Inc.,* 937 F.Supp. 845, 851-52 (E.D. Mo. 1996) (plaintiffs restricted to premises but "were and are free to eat, sleep, read,

watch television, make phone calls, play cards, etc. as they desired" during breaks). *See also* 29 C.F.R. § 785.19(b) (requiring employee to remain on premises does not require compensation under the more restrictive "completely relieved from duty" standard).

Moreover, the facts that Plaintiff must carry his radio with him and may be recalled from break due to an emergency do not render his break periods compensable under the FLSA.  In *Bridges v. Amoco Polymers, Inc.*, 19 F. Supp. 2d 1375, 1379 (S.D. Ga. 1997), for example, the district court stated:

> Neither the case law nor the [FLSA] state or suggest that the mere fact that an employee may be recalled from their [sic] lunch break amounts to a severe restriction. Indeed, such logic would arguably cause most all lunches to be compensable, for most every employee in the Nation is subject to having his lunch hour interrupted by his employer in some fashion or another to handle a "big event."

*See also Avery v. City of Talladega*, 24 F.3d 1337, 1347 (11th Cir. 1994) (requiring police officers to "leave their radios on" does not render meal breaks compensable); *In re Chicago Police Dep't F.L.S.A. Meal Period Litigation,* 1995 U.S. Dist. LEXIS 4006, at **25-28 (N.D. Ill. March 28, 1995) ("[R]equirement to remain in either radio or telephone contact does not render Officers' meal periods compensable under FLSA."); *Berger v. Cleveland Clinic Found.*, 2007 U.S. Dist. LEXIS 76593, at **53-54 (N.D. Ohio 2007) ("Construing the facts in Plaintiff's favor, he was able to choose when to take his lunch break and he could go anywhere within the CCF's large campus.  The fact that he was required to carry a pager with him does not, by itself, make his lunches compensable.").  Indeed, one court has reasoned, in the context of employees required to remain on the employer's premises and were subject to recall during their meal periods, that "it is a fair inference that radios enhance employees' freedom during the lunch

break," as it allows employees to be contacted by their supervisors without requiring them to remain in "voice range." *Agner v. U.S.,* 8 Cl. Ct. 635, 638 (Cl. Ct. 1985).

Further, Plaintiff cannot demonstrate that his meal breaks were subject to interruption with any frequency.  In applying the "predominant benefit" standard, courts assess the nature and frequency of any interruptions to an employee's breaks, and whether the employee was permitted to resume an interrupted break. *See Ruffin v. MotorCity Casino*, 775 F.3d 807, 813 (6th Cir. 2015); *Haviland v. Catholic Health Initiatives,* 729 F. Supp. 2d 1038, 1071-72 (S.D. Iowa 2010). "The frequency of such interruptions is important because the question is not whether the employees' meals were interrupted . . . but whether the degree of interruption caused them to spend their meal periods primarily for the employer's benefit." *Ruffin*, 775 F.3d at 813; *Mendez*, 232 F.R.D. at 84 ("If it is determined that lunch breaks were rarely interrupted and only for brief periods, then no compensation would be required.").  Here, it is undisputed that Plaintiff is permitted to take another meal break in the event his break is interrupted due to an emergency. (Joint Stipulation  ¶9).

At his deposition, Plaintiff repeatedly dodged questions concerning what work duties, if any, prevent him from taking a lunch break:

> Q. What duties do you claim you have to perform during your lunch breaks?
> A. What duties?
> Q. What duties do you perform during your lunch breaks from which you have not been relieved?
> A. If I'm on lunch break, then I shouldn't have no duties.
> Q. So which duties do you claim you are required to perform during your lunch break?
> A. That we spoke about earlier when you asked me: What were my duties?
> Q. You are saying you perform all your duties during your lunch break?
> A. Here is what I'm saying: During my lunch break, there should not be any duties.
> Q. I understand your response. I'm asking: Which, if any, duties do you actually perform during your lunch breaks?
> A. Again, it should be none.
> Q. So you can't identify a single duty you perform during your lunch break?
> A. If I'm on lunch, I'm performing no duties.

(Pl.'s Dep. at 121:15-122:14).

In *Haviland*, the court – recognizing that security officers' meal breaks might be compensable if frequently interrupted – found that the plaintiffs' "vague and generalized assertions of frequent interruptions" to their breaks were insufficient to survive summary judgment. *Haviland*, 729 F. Supp. 2d at 1064-65.  Although one officer in that case claimed that his breaks were interrupted by calls to duty 80% of the time, another officer admitted that his breaks were interrupted only about six times a month. *Id.* at 1064.  The lead plaintiff testified that he was "always required to be responsible for something or be doing something," but this, standing alone, failed to create a genuine issue of whether plaintiffs were required to perform substantial job-related duties during their break, or whether the hospital knew of their alleged work activities beyond remaining on site, carrying a radio, and being available to respond to emergencies. *Id.*  The plaintiffs also presented no evidence that they were not permitted to continue an interrupted break at a later time or claim pay for that time, and admitted that they were aware of the requirement to inform a supervisor if a meal period had actually been interrupted. *Id.* at 165.  The hospital's activity tracking system in *Haviland* also showed that the security officers had extensive periods of uninterrupted time, and the plaintiffs could not identify any specific interruptions to dispute the accuracy of the tracking system. *Id.* at 165-66.

Here, Plaintiff has not presented any evidence that his meal breaks were interrupted at all. Nor has he produced any evidence that he was denied an additional break or the opportunity to claim pay when his meal break was, in fact, interrupted.  Although the parties agree that Plaintiff may be contacted if an emergency occurs during the course of a meal break, he has not identified any specific periods of interruption. (56.1 ¶¶ 38-40).

14

Plaintiff has not identified any specific day when a meal break was interrupted or wholly missed, and any speculative assertions to this effect would be insufficient to survive summary judgment. *See Wilson v. City of Chicago*, 2004 U.S. Dist. LEXIS 18833, at *20 (N.D. Ill. Sept. 20, 2004) ("If Plaintiff himself cannot recall even a single instance in which he was required to perform police work during his lunch break, no reasonable jury could find that such instances occurred."); *Harvill v. Westward Communications, L.L.C.,* 433 F.3d 428, 441 (5th Cir. 2005) (affirming summary judgment on "unsubstantiated assertions" that plaintiff was forced to record inaccurate time where plaintiff could not show duration of any actual work); *Simmons v. Wal-Mart Associates, Inc.,* 2005 U.S. Dist. LEXIS 21772, at **27-31 (S.D. Ohio July 19, 2005) (plaintiff claimed uncompensated work, but "fail[ed] to identify a single specific day on which this occurred."); *Aamold v. United States,* 39 Fed. Cl. 735, 742 (Fed. Cl. 1997) (plaintiff could not "demonstrate with any particularity how often these interruptions occur and how much of each meal period is consumed by such interruptions" and two plaintiffs admitted that "there were very few meal-time interruptions"); *see Marti v. Grey Eagle Dist., Inc.,* 937 F. Supp. 845, 851-52 (E.D. Mo. 1996) (one plaintiff "was unable to cite a single instance when his break was interrupted . . . .").

Unites States Department of Labor ("DOL") opinion letters further support the conclusion that the minor restrictions on Plaintiff's meal breaks, coupled with the fact that he may be subject to interruption in emergency circumstances, do not render this time compensable under the FLSA.  In a February 12, 1997 opinion letter considering employees "required to remain 'on call' in the company break room," the DOL, in applying the *more restrictive* "completely relieved from duty" test under 29 C.F.R. § 785.19(a), reasoned that an employee's on-premises meal period would not be compensable if "totally uninterrupted or […] only

interrupted for rare and infrequent emergency calls to duty." Wage and Hour Opinion Letter, Fair Labor Standards Act, U.S. Dep't of Labor, 1997 DOLWH LEXIS 12, at **1-3 (Feb. 12, 1997).[6] Likewise, the DOL has concluded that employees who are "restricted to a small lunch room" and who "cannot change clothes, make phone calls or smoke, and cannot leave the building" need not be compensated for their meals because "the mere fact that the employees are not allowed to leave the premises and are otherwise slightly restricted in their activities during the meal period does not make the time hours worked." Wage and Hour Opinion Letter, Fair Labor Standards Act, U.S. Dep't of Labor, FLSA2004-7NA, 2004 DOLWH LEXIS 24, at **1-3 (Aug. 6, 2004).

Although the Hospital does receive a benefit by Plaintiff's on-site presence at Grand Concourse, inasmuch as it permits the Hospital to ensure that a qualified individual will be available to respond and assist in the event of a fire or life safety emergency, this alone is insufficient to render the time for the predominant benefit of the Hospital. Like the security officers working single employee shifts in *Haviland*, 729 F. Supp. at 1059-60, the *Babcock* prison officers required to be present absent permission due to comply with alleged safe-staffing ratios, 2014 U.S. Dist. LEXIS 22170, at **17-18, 25-26 (W.D.P.A. Feb. 21, 2014), *aff'd* 806 F.3d 153 (3d Cir. 2015), or employees required to remain on the premises to ensure adequate staffing considered by the DOL under the more restrictive "completely relieved from duty" standard, DOL Op. Letter, 1997 DOLWH LEXIS 12 (Feb. 12, 1997), there would naturally be some burden to the Hospital associated with permitting Plaintiff to leave the premises during his breaks. Nonetheless, considering all relevant circumstances, it is clear that Plaintiff – rather than being required to "work" during his breaks – can "adequately and comfortably" spend his meal breaks where he likes within the Hospital premises, may engage in virtually any activity he

---

[6] Opinion letters of the Wage and Hour Division of the United States Department of Labor are entitled to *Skidmore* deference. *Skidmore v. Swift*, 323 U.S. 134, 140 (1944) (Opinion letters are not controlling on the Court but "do constitute a body of experience and informed judgment to which the courts ... may properly resort for guidance.").

chooses during this time, and is only expected to interrupt his break time in the event of an emergency.

By contrast, those cases that have held employees' meal breaks to be compensable involved circumstances where employees were subject to significant restrictions and limitations or otherwise performed substantial duties for the benefit of their employer. In *Reich*, for example, the Second Circuit affirmed a district court's finding that a telephone company's "outside craft employees" performed "substantial duties" during meal periods on which they were restricted to open, outdoor work sites – such as open manholes, trenches, and telephone poles – which could all be subject to intrusion by members of the public. *Reich v. S. New Eng. Telecoms. Corp.*, 892 F. Supp. 389, 393, 401-402 (D. Conn. 1995); *Reich v. S. New Eng. Telecoms. Corp.*, 121 F.3d 58, 61-63 (2d Cir. 1997).

During their lunch breaks, the outside craft employees in *Reich* were required to remain at their worksite and eat in their trucks or adjacent to the open work site, and were responsible for keeping vigilant watch over their worksites to prevent vandalism or theft of, and damage to, valuable tools and machinery (including trucks, fresh air ventilation systems, water pumps, gas testing and fiber optic devices, cable and wire, and hand held tools). *Reich,* 892 F. Supp. at 392-95. They were also responsible for watching for children and other members of the public who could be injured by entering the "open" site, and for ensuring the security of materials against exposure to the elements (for example, watching sensitive "telephone plant" that could be damaged in seconds if unattended). *Id.* In addition, the workers were regularly required to perform substantial duties during their lunch periods, including checking operational machinery, pumping groundwater out of manholes, meeting with supervisors, directing traffic flow, reviewing blueprints or other materials, and even holding tarps over exposed wiring to protect it

17

from the rain. *Id.* at 395. *See Reich*, 892 F. Supp. at 396 (various affected positions performed "compensable responsibilities and duties" during 60-80% of their lunch periods); *Reich*, 121 F.3d at 69 (affirming award payment based on those ratios). *See also Local 889, AFSCME v. Louisiana ex rel. Dep't of Health & Hosps.*, 145 F.3d 28, 283 (5th Cir. 1998) (meal period could not offset uncompensated roll call because corrections field officers were required to take lunch in cafeteria with prison inmates); *Bernard v. IBP, Inc.*, 154 F.3d 259, 262-63 (5th Cir. 1998) (sustaining jury verdict where maintenance workers meal breaks subject to "frequent" interruptions and were often required to meet with supervisors during breaks); *Beasley v. Hillcrest Med. Ctr.,* 78 F. App'x 67, 69 (10th Cir. 2003) (reversing summary judgment for employer where nurses presented evidence they were frequently interrupted and spent their meal periods working on a computer); *Alexander v. City of Chicago*, 994 F.2d 333, 335 (7th Cir. 1993) (police officers were, *inter alia*, not permitted to read non-departmental publications, not permitted to eat with other officers, and were subject to report and review by inspectors during their meal breaks).

Based on this overwhelming precedent, the minimal restrictions placed on Plaintiff during his Grand Concourse meal breaks do not render his meal breaks compensable under the FLSA or NYLL.  Further, because his meal breaks are not subject to interruption with any frequency, and he is permitted to take another uninterrupted break in the event of any interruption, Plaintiff's half-hour meal breaks are clearly predominantly for his own benefit, "*bona fide,*" and, thus, not compensable under the FLSA and NYLL.  Because Plaintiff's meal breaks at other Hospital sites at which he worked involved either the same or lesser restrictions as those he experienced at Grand Concourse, (56.1 ¶42), Plaintiff cannot show that any of his meal breaks were compensable.

**Point II**

**PLAINTIFF'S FAILURE TO FOLLOW HOSPITAL
POLICY FOR REPORTING INTERRUPTED MEAL BREAKS
PRECLUDES HIS CLAIM**

To the extent Plaintiff could conceivably identify a specific shift or shifts when he was unable to receive an uninterrupted 30-minute meal break, his failure to follow the Hospital's established policy for reporting missed breaks – of which he was aware – would still preclude any recovery.

It is well-established that a timekeeping system that automatically deducts unpaid meal periods from employees' time is not *per se* unlawful if the employer provides a mechanism by which the employees can claim pay for any time actually worked during their meal breaks. *See, e.g., Gordon v. Kaleida Health*, 299 F.R.D. 380, 391-92 (W.D.N.Y. 2014); *DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 27 F. Supp. 3d 313, 320-23 (E.D.N.Y. 2014).  Under the FLSA, employers must compensate employees for work that is "suffered or permitted" – that is, work of which the employer is or should be aware. *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. N.Y. 2008) ("It is clear an employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work."); *Singh v. City of New York*, 418 F. Supp. 2d 390, 397 (S.D.N.Y. 2005), *aff'd* 524 F.3d 361 (2nd Cir. 2008) ("If a court determines that the activity at issue constitutes 'work', an employee in the Second Circuit is only entitled to compensation for those hours of work performed of which the employer had actual or constructive knowledge."); *c.f.*, 29 C.F.R. § 785.11 (if an "employer knows or has reason to believe that [an employee] is continuing to work[,] the time is working time").  As such, an employee cannot recover in an action for unpaid meal time when he declines to follow an employer's reasonable, established policy for the reporting of missed meals. *Ellis v.*

19

*Common Wealth Worldwide Chaueffuered Transp. of NY, LLC*, 2012 U.S. Dist. LEXIS 40288, at **25-30 (E.D.N.Y. March 23, 2012) ("Plaintiff has not pointed to any evidence in the record that Defendants violated their written policies and declined to pay Plaintiff when he told his supervisor that he could not take a meal break"); *see also Gordon v. Kaleida Health*, 299 F.R.D. 380, 395-96 (W.D.N.Y. 2014); *DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 27 F. Supp. 3d 313, 322-23 (E.D.N.Y. 2014); *White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 876-77 (6th Cir. 2012) (where employer arranges a "reasonable process for an employee to report uncompensated time," it "is not liable for non-payment if the employee fails to follow the established process").

Hospital policy requires that Safety Officers who are required to remain at Grand Concourse during their meal breaks record any interruptions to break time in the Fire Command logbooks and either take a subsequent, uninterrupted meal break during their shift or notify their supervisor so that they may be paid for the time. (56.1 ¶36). This requirement is designed to create a contemporaneous record demonstrating that the Safety Officer was, in fact, unable to take the break and to ensure that the Safety Officers' supervisors are aware of it. (56.1 ¶37). Plaintiff acknowledges that this is the Hospital's policy, yet the Safety Department has no record of Plaintiff ever providing notice of any interrupted or missed meal break in accordance with departmental requirements at any time during the relevant period. (56.1 ¶¶38-39). At his deposition, Plaintiff also could not recall any specific instance in which he contacted Safety Department administration about an interruption to his break time. (56.1 ¶40).

As noted, Plaintiff routinely records that he received "no relief for lunch," "no lunch or break," "no lunch" or similar notations in the Grand Concourse Fire Command logbooks. (56.1 ¶41). However, Plaintiff admits that these assertions refer only to his ongoing complaint – the

subject of this motion – that he believes he does not receive *bona fide* meal breaks because he must remain on the Hospital premises, carry a radio, and be available to respond to emergency calls. (Joint Stipulation ¶10; Pl.'s Dep. at 150:7-151:19, 194:21-195:9).   Indeed, Plaintiff affirmed in his deposition testimony that this was exactly the substance and nature of his complaint against the Hospital concerning his meal breaks. *Id.*[7]   Despite the Hospital having considered and rejected Plaintiff's complaint on this point several times over many years (Nhambiu Decl. ¶7), Plaintiff nonetheless continues to object to the Hospital's policy and to make notations in the logbooks as an expression of his ongoing protest. (Pl.'s Dep. at 177:15-178:19, 184:18-187:16)

Plaintiff's practice of registering protest of the Hospital's policy in the Fire Command logbooks, however, is not sufficient to provide the Hospital with actual or constructive notice that any given meal break was missed.  Ms. DuBois does not review the Fire Command logbooks on a daily, weekly, or even monthly basis. (DuBois Dep. at 66:25-68:5).  Without Plaintiff's compliance with the requirement to affirmatively report missed meal breaks, his supervisors would not have timely notice that Plaintiff's meal break was interrupted.   Representative excerpts of Fire Command logbooks reflect that Plaintiff regularly had uninterrupted periods of time during his shifts in which to take 30-minute meal breaks, yet he nonetheless recorded in these logbook entries that he did not receive a lunch break, despite identifying no interruptions. *See* DuBois Decl. Ex. A (no incidents recorded between, *inter alia*, 1:57 PM to 4:00 PM on Plaintiff's August 14, 2013 day shift), Ex. B (no incidents recorded between, *inter alia*, 12:08

---

[7] Although not relevant to the instant motion, Plaintiff also testified that he complained to Hospital Labor Relations Director Jasen Nhambiu that the time allotted for his meal breaks had been reduced to a half hour in 2007 and that he was expected to perform Cashier Office duties ostensibly outside the scope of his job description. Plaintiff, however, has not asserted any claims based on this alleged reduction of the time allotted for his meal periods in 2007 nor does he claim that the Cashier Office duties in any way interfere with his ability to take a meal break (Joint Stipulation ¶¶1, 3, 8-10).

PM to 4:00 PM, and 4:00 PM to 10:56 PM on Plaintiff's  December 18, 2013 day and evening

shifts), Ex. C (no incidents recorded between, *inter alia*, 11:14 AM to 1:12 PM, and 1:12 PM to

2:16 PM on Plaintiff's February 17, 2014 day shift), Ex. D (no incidents recorded between, *inter*

*alia*, 9:32 AM to 3:20 PM on Plaintiff's April 23, 2015 day shift), Ex. E (no incidents recorded

between, *inter alia*, 12:30 PM to 1:30 PM and 5:06 PM to 10:02 PM on Plaintiff's May 21, 2015

day and evening shifts).

 In the absence of affirmative notice from Plaintiff, the Hospital would have no reason to

believe that he was unable to take an uninterrupted meal break based on the activities set forth in

the logbooks.   Indeed, Plaintiff confirmed that he himself would refer to the logbooks to

ascertain the exact activities that he performed each day. (Pl.'s Dep. at 159:9-17).  Further,

Plaintiff's near-uniform protestations in the Fire Command logbooks about the restrictions on his

meal periods prevent the Hospital or the court from discerning which, if any, of Plaintiff's meal

breaks were actually interrupted on any given day.

As Plaintiff has prevented the Hospital from becoming aware of any actual missed or

interrupted breaks by failing to follow the Hospital's established procedure of recording

interruptions in the Fire Command logbooks and notifying his supervisors of the same, he cannot

satisfy his own burden to show that he performed compensable work during these times and

claim that the Hospital was or should have been aware of it.  "[A]n employee cannot undermine

his employer's efforts to comply with the FLSA by consciously omitting overtime hours for

which he knew he could be paid." *Wood v. Mid-America Mgmt. Corp.*, 192 Fed. Appx. 378, at

*9 (6th Cir 2006). *See also*, *Ellis v. Common Wealth Worldwide Chaueffuered Transp. of NY,*

*LLC*, 2012 U.S. Dist. LEXIS 40288, **25-30 (E.D.N.Y. March 23, 2012) (plaintiff failed to

notify his employer of missed breaks pursuant to established policy); *Forrester v. Roth's I.G.A.*

*Foodliner, Inc.*, 475 F. Supp. 630, 634 (D. Or. 1979) (plaintiff could not recover where he "prevented the [employer] from complying with the Act by failing to report his overtime hours accurately"), *aff'd, Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414-415 (9th Cir. 1981) ("An employer must have an opportunity to comply with the provisions of the FLSA. . . . [W]here the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have [violated the FLSA].").

For these additional reasons, the Hospital is entitled to summary judgment as to Plaintiff's overtime claims as a matter of law.

## Conclusion

For the foregoing reasons, the Hospital's motion for summary judgment should be granted and Plaintiff's Third Amended Complaint dismissed in its entirety.

Dated: New York, New York
       July 15, 2016

COLLAZO FLORENTINO & KEIL LLP

By: ___ *Philip Repash* _

       Philip F. Repash
       Nicholas R. Bauer
       Attorneys for Defendant
       Bronx-Lebanon Hospital Center
       747 Third Avenue
       New York, New York 10017
       (212) 758-7600