```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
CRAIG PERKINS,                       :    14 Civ. 1681 (JCF)
                                     :
              Plaintiff,             :    MEMORANDUM
                                     :    AND   ORDER
     - against -                     :
                                     :
BRONX LEBANON HOSPITAL CENTER,       :
                                     :
              Defendant.             :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/31/16

The plaintiff, Craig Perkins, filed this action against his employer, Bronx Lebanon Hospital Center (the "Hospital"), for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and New York Labor Law ("NYLL").[1] Mr. Perkins' sole remaining claim in this action is that the Hospital violated the FLSA and NYLL by failing to pay him overtime compensation for his meal breaks. The Hospital has moved for summary judgment on this issue. The motion is granted.[2]

Background

The following facts are taken from the defendant's statement of undisputed facts filed pursuant to Local Civil Rule 56.1 (Defendant's Statement of Undisputed Facts Pursuant to Local Civil

---

[1] The plaintiff's original and first amended complaints also named as a defendant Mr. Perkins' union, 1199 SEIU United Healthcare Workers East, but the claims against it were dismissed with prejudice. See Perkins v. 1199 SEIU United Healthcare Workers East, 73 F Supp. 3d 278, 283-87, 291 (S.D.N.Y. 2014). Mr. Perkins' subsequent amended complaints name only the Hospital.

[2] The parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). (Notice, Consent, and Reference of a Civil Action to a Magistrate Judge dated July 6, 2015).

1

Rule 56.1 dated July 15, 2016 ("Def. 56.1 Statement")), which relies heavily on the stipulation the parties previously submitted in order to narrow the issues in the case (The Parties' Stipulation Concerning Remaining Claims and Uncontested Facts filed July 1, 2016).  I have also relied on certain facts contained in the affidavit the plaintiff submitted in opposition to the motion. (Affidavit of Craig Perkins dated Aug. 16, 2016 ("Perkins Aff."))[3].

The Hospital assigns one Safety Officer to its Grand Concourse building for each of three eight-hour shifts.  (Def. 56.1 Statement, ¶¶ 9-10).  In accordance with its interpretation of New York City law, the Hospital requires that at least one person

---

[3] The plaintiff's affidavit largely fails to comply with Rule 56(c) of the Federal Rules of Civil Procedure, as it contains legal argument and other statements that would be inadmissible as evidence.  See Fed. R. Civ. P. 56(c)(4) ("An affidavit . . . used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.").  It fails utterly  to comply with Local Civil Rule 56.1(b), which requires that

> [t]he papers opposing a motion for summary judgment [] include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

I therefore deem the facts included in the defendant's Rule 56.1 Statement admitted.  See, e.g., Liles v. New York City Department of Education, 516 F. Supp. 2d 297, 301 n.3 (S.D.N.Y. 2007) (deeming facts included in defendant's Rule 56.1 Statement admitted where plaintiff's submission "fails to specifically counter" defendant's Rule 56.1 Statement); see also Suares v. Cityscape Tours, Inc., 603 F. App'x 16, 17–18 (2d Cir. 2015).  In addition, I will not consider any factual assertion in the plaintiff's affidavit that does not comply with Rule 56(c).  Any fact I have credited from the plaintiff's submission has not been disputed by the defendant.

certified as a Fire Safety Director by the New York City Fire Department ("Fire Department") "remain on or about the premises of Grand Concourse at all times to monitor and provide assistance in the event of an alarm activation or other emergency." (Def. 56.1 Statement, ¶ 11).

Mr. Perkins, a certified Fire Safety Director, is employed in the Hospital's Safety Department as a Safety Officer. (Def. 56.1 Statement, ¶¶ 1-2, 12). When he is assigned to work at the Grand Concourse building, his primary work location is the Fire Command Station, which houses the fire alarm control panel, an instrument that both shows the location of any fire alarm activations in the building and displays non-emergency alerts related to the fire suppression systems within or around the building. (Def. 56.1 Statement, ¶¶ 15-16). While at the Fire Command Station, he has a number of different duties, including monitoring the control panel. (Def. 56.1 Statement, ¶¶ 16, 18). His work also routinely requires him to leave the Fire Command Station to perform duties in other areas, including around the exterior premises of the Hospital. (Def. 56.1 Statement, ¶¶ 19-20; Perkins Aff., ¶¶ 6-7). If an emergency were to occur while he was away from the Fire Command Station, he would receive notice of emergency alarm activations in one of two ways: "through the overhead alarms and speaker-strobes located throughout the building, which may be audible and visible outside the building around the perimeter" or through a communication to his cell phone, radio, or pager. (Def. 56.1 Statement, ¶¶ 25-26). When the alarm system is triggered, the Fire

Department is automatically notified. (Perkins Aff., ¶ 14; Deposition of Fifi Dubois dated March 3, 2016 ("Dubois Dep.") at 59). However, when the system is "off-line" it is "removed from active notification to the [F]ire [D]epartment." (Dubois Dep. at 59).

One half-hour of each Safety Officer's eight-hour shift "is automatically deducted . . . for [a] meal break[]."[4] (Def. 56.1 Statement, ¶ 14). Meal breaks maybe taken at any time other than the first or last half-hour of a shift. (Def. 56.1 Statement, ¶ 35). Although Safety Officers must clock in before and clock out after their shifts using the Hospital's fingerprint-scanning time clocks, they need not do so before or after their meal breaks. (Def. 56.1 Statement, ¶¶ 13-14). Instead, prior to taking a meal break, a Safety Officer must inform the Hospital's Security Department, Telecommunications Department, and Engineering Department. (Def. 56.1 Statement, ¶ 24). He must stay on the Grand Concourse premises during the meal break and carry his "radio, cell phone and/or Fire Command pager" so that he can be contacted by Hospital personnel in an emergency, which would

---

[4] Mr. Perkins' principal argument is that the thirty-minute periods are not bona fide meal breaks, see, e.g., Reich v. Southern New England Telecommunications Corp., 121 F.3d 58, 63-64 (2d Cir. 1997) ("SNET") (interpreting 29 C.F.R. § 785.19 ("Bona fide meal periods")), and that, consequently, the Hospital violates the FLSA and NYLL by not paying him for that time. (Plaintiff's Memorandum of Law in Opposition to Defendant[] Bronx Lebanon Hospital Center's Motion for Summary Judgment ("Pl. Memo.") at 16; Perkins Aff., ¶¶ 3-5, 11, 18-20, 22-23). I use the term "meal break" in this memorandum merely as a shorthand to refer to the thirty-minute period for which Mr. Perkins is not paid, rather than as an indication that the time constitutes a bona fide meal break.

require his return to the Fire Command Center. (Def. 56.1 Statement, ¶¶ 23, 27-28). During meal breaks Security Officers have access to Hospital facilities and may eat and drink, read, and use their cell phones for personal business, among other activities. (Def. 56.1 Statement, ¶¶ 32-34). If a meal break is interrupted by an emergency, Hospital policy requires the Safety Officer to "take a subsequent, uninterrupted meal break . . . or to note the interruption in the [Fire Command Logbook] and notify his supervisor so that he may be paid for the time." (Def. 56.1 Statement, ¶¶ 14, 36).[5]

According to the plaintiff, he is rarely contacted via radio during a shift at Grand Concourse, and he "could not recall any specific instance in which he contacted Safety Department administration about an interruption to his break time." (Def. 56.1 Statement, ¶¶ 31, 40). Nevertheless, since approximately 2007, Mr. Perkins "has routinely recorded the phrase[s] 'no lunch or break,' 'no relief for lunch,' 'no lunch,' or other similar notations in the Fire Command Logbooks" due to "his position that his meal breaks are not 'bona fide'" because of the aforementioned restrictions on his break-time movement and, consequently, his break-time activities. (Def. 56.1 Statement, ¶ 41). There are no records indicating that he has ever provided notice of an interrupted or missed meal break "in accordance with departmental

---

[5] Similar restrictions apply to meal breaks in other Hospital buildings to which Mr. Perkins is sometimes assigned. (Def. 56.1 Statement, ¶¶ 7-8, 42). However, I focus, as do the parties, on practices at Grand Concourse.

requirements" during the period relevant to this case.  (Def. 56.1 Statement, ¶ 39).

Discussion

    A.    Legal Standards

        1.    Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a); Utica Mutual Insurance Co. v. Munich Reinsurance America, Inc., 594 F. App'x 700, 701-02 (2d Cir. 2014).  The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is "material" if it "might affect the outcome of the suit under [] governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

If the movant meets this initial burden, the opposing party then must come forward with "specific facts showing that there is a genuine issue for trial."  Id. at 324 (quoting former Fed. R. Civ. P. 56(e)).  In assessing the record to determine whether there

is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Anderson, 477 U.S. at 255; Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. Anderson, 477 U.S at 249-50. "The litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials,' but must bring forth 'some affirmative indication that his version of relevant events is not fanciful.'" Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.1980)); see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)).

2.  Meal Breaks

"The central issue in mealtime cases is whether employees are required to 'work' as that term is understood under the [relevant statutes]."[6]  SNET, 121 F.3d at 64.  In this Circuit, whether an employee's activities "could potentially constitute 'work'" is a question of law for the court, and therefore susceptible to decision on a motion for summary judgment.  Singh v. City of New York, 418 F. Supp. 2d 390, 397 (S.D.N.Y. 2005) (quoting Holzapfel v. Town of Newburgh, 145 F.3d 516, 521 (2d Cir. 1998)), aff'd, 524 F.3d 361 (2d Cir. 2008).

> After the court defines "work" as a matter of law, the fact finder determines "not only how much of plaintiff's time . . . [falls] within the court's definition of 'work' and would be compensable, but also how much of that time was spent with the employers actual or constructive knowledge."  If a court determines that the activity at issue constitutes "work," an employee . . . is [] entitled to compensation for those hours of work performed of which the employer had actual or constructive knowledge.

Id. (first and second alterations in original) (internal citation omitted) (quoting Holzapfel, 145 F.3d at 521, 524); see also Gibbs v. City of New York, 87 F. Supp. 3d 482, 490 (S.D.N.Y. 2015) ("It falls to the trial judge to determine whether the employee's activities 'could potentially constitute "work,"' while it falls to the jury to determine how much time was spent 'within the court's definition of "work."'" (quoting Holzapfel, 145 F.3d at 521)).

The Second Circuit has held that an employee must be

---

[6] The NYLL "incorporate[s] FLSA standards for determining whether time worked is compensable time."  Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385, 393 (N.D.N.Y. 2011).

8

"compensat[ed] for a meal break during which a worker performs activities predominantly for the benefit of the employer." SNET, 121 F.3d at 64; accord Alonso v. 144 Ninth Gotham Pizza, Inc., Nos. 12 Civ. 3133 et al., 2016 WL 4257526, at *1 (S.D.N.Y. Aug. 10, 2016). This is a "flexible" standard that is "necessarily fact-bound." SNET, 121 F.3d at 64. The same standard applies if the employee is "on call" during the meal period. Babcock v. Butler County, 806 F.3d 153, 155-56 (3d Cir. 2015) (adopting "predominant benefit" test in case where employees must remain on site to respond to emergencies during unpaid portion of lunch break); Ruffin v. MotorCity Casino, 775 F.3d 807, 809, 811 (6th Cir. 2015) (using "predominant benefit" test in case where employees must respond to emergencies during meal breaks); Haviland v. Catholic Health Initiatives-Iowa Corp., 729 F. Supp. 2d 1038, 1059-60 (S.D. Iowa 2010) (same). It is the plaintiff's burden to show that he "in fact performed work for which [he was] improperly compensated." SNET, 121 F.3d at 67.

    B.   Analysis

As the defendant notes, in determining whether a meal break is compensable, courts consider "the limitations and restrictions placed upon the employees, the extent to which those restrictions benefit the employer, the employee's duties during the meal period, the frequency of meal period interruptions, and whether employees are allowed to resume an interrupted break." (Defendants Bronx-Lebanon Hospital Center's Memorandum of Law in Support of Its Motion for Summary Judgment at 8-9). Here, the relevant facts are

undisputed. During his shifts, Mr. Perkins is the only Safety Officer and Fire Safety Director on duty at Grand Concourse. One-half hour is automatically deducted from Mr. Perkins' eight-hour work day for a meal break. The restrictions on the time at which he may take his meal break are minimal. They are somewhat more onerous with regard to his location and activities during this period because he must stay on the Grand Concourse premises with a communications device so that he can respond in the case of an emergency. If his meal break is interrupted, he is to take a later, uninterrupted break. If he is unable to take an uninterrupted meal break because he has been called to an emergency, there are policies in place to enable him to be paid for the time spent working. However, his meal break has rarely, if ever, been interrupted.

Recent cases indicate that Mr. Perkins is not "perform[ing] activities predominantly for the benefit of [his] employer," SNET, 121 F.3d at 64, during the thirty-minute period for which he is not paid. For example, in Ruffin, the plaintiffs, security guards at a casino, were required to "remain on casino property during meal periods, monitor two-way radios, and respond to emergencies if called to do so." Ruffin, 775 F.3d at 809. The Sixth Circuit found that these restrictions and duties did not constitute compensable "work." The court noted that monitoring the radio was a "de minimis activity, not a substantial job duty" and that the guards were able to "spen[d] their meal periods doing exactly what one might expect an off-duty employee to be doing on a meal break

10

[--] eating, socializing, reading, surfing the Internet, and conducting personal business on their smartphones" -- particularly as the meal periods were "only occasionally" interrupted by emergencies.  Id. at 811, 813-14.  Because the "plaintiffs perform[ed] no substantial job duties during meal breaks, emergency calls rarely -- if ever -- interrupt[ed] the guards' meals, and the guards pursued their 'mealtime adequately and comfortably,'" the defendant was entitled to summary judgment on the plaintiffs' meal break claim.  Id. at 815 (quoting Hill v. United States, 751 F.2d 810, 814 (6th Cir. 1984)).  Similarly, in Babcock, prison guards who were required to spend their meal breaks in uniform, within the "physical building of the prison" and close to emergency response equipment so that they could respond to emergencies if required, were not entitled to wages for the fifteen minutes of their meal break that was unpaid.  Babcock v. Butler County, No. 12 CV 394, 2014 WL 688122, at *6, 8-9 (W.D. Pa. Feb. 21, 2014), aff'd, 806 F.3d 153 (3d Cir. 2015).  Although the employees "face[d] a number of restrictions during their meal period" -- they could not "run personal errands, sleep, breathe fresh air, or smoke cigarettes," for example -- their meal-break activities "did not predominantly benefit the employer."  Babcock, 806 F.3d at 155, 157.  And in Haviland, public safety officers at a hospital complex "[were] not permitted to leave [the hospital's] premises during a meal break period, and [were required to] carry a radio and respond to situations that may arise" during their meal break.  Haviland, 729 F. Supp. 2d at 1040, 1061.  The court recognized that "responding

to tasks, waiting to be engaged to respond to tasks, acting as a visual deterrent, and simply being a presence in the facilities to which they were assigned" were among the officers' functions; however, the restrictions imposed and duties required during the meal breaks did not convert the non-compensable break to compensable "work" as defined by the FLSA.[7] Id. at 1058, 1066-73; see also id. at 1061-62 (collecting cases holding that being required to remain on employer's premises and monitor radio to respond to emergent situations did not "convert[] meal time to work time").

Moreover, a Department of Labor opinion letter indicates that Mr. Perkins' meal breaks are not compensable. The letter addresses the question of whether sales associates who could leave the store premises during their half-hour lunch period "only if at least two other store associates remain[ed] in the store" were entitled to be paid for their break if it was uninterrupted by a circumstance requiring them to return to the sales floor. United States Department of Labor, Opinion Letter, Fair Labor Standards Act, 1997 WL 998005, at *1 (DOL Wage-Hour Feb. 12, 1997) ("DOL 2/27/97 Opinion"). The agency opined that the sales associates did not

---

[7] Mr. Perkins' attempt to distinguish Haviland on the basis that "[t]here was no indication in the text of that case that the security guards were responsible for responding to emergencies that potentially were building-wide" (Pl. Memo. at 14), is unavailing. First, it is inaccurate. Among the plaintiffs' responsibilities in that case was responding to fire alarms. Haviland, 729 F. Supp. 2d at 1064.  Moreover, Mr. Perkins' does not explain why this distinction should make a difference to the question of whether a meal break is spent predominantly for the benefit of the employer.

have to be compensated "[if] their meal period [was] totally uninterrupted or [] only interrupted for rare and infrequent emergency calls to duty."[8] DOL 2/27/97 Opinion, at *1. Here, as noted, the plaintiff is rarely, if ever, interrupted during his meal break.

Mr. Perkins does not effectively counter this authority. Instead, he cites cases that are factually inapposite. Armour & Co. v. Wantock, 323 U.S. 126 (1944), and Skidmore, 323 U.S. 134 (1944), both involved fire protection officers who were required to be on call and remain on or near the employer's premises after their regularly scheduled work hours. Armour, 323 U.S. at 127; Skidmore, 323 U.S. at 135-36. The Court in Armour held that, although the employees largely spent the on-call time waiting for emergency calls and sleeping, eating, "or entertain[ing] themselves pretty much as they chose," the time was working time:

> We think the Labor Standards Act does not exclude as working time periods contracted for and spent on duty in the circumstances disclosed here, merely because the nature of the duty left time hanging heavy on the employees' hands and because the employer and employee cooperated in trying to make the confinement and idleness incident to it more tolerable.

323 U.S. at 128, 134. In Skidmore, under similar facts, the Court remanded the case for the court below to determine whether the

---

[8] Department of Labor Opinion Letters are entitled to deference "to the extent that [they] have the 'power to persuade.'" cf. Christensen v. Harris County, 529 U.S. 576, 587 (2000) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)); Hill v. Delaware North Companies Sportservice, Inc., __ F.3d __, __, 2016 WL 5746294, at *6 (2d Cir. 2016) (same). The Department of Labor's position in this opinion letter is supported by the cases discussed above, and I therefore find it persuasive.

13

after hours on-call time constituted work time.  323 U.S. at 135-36, 140.  Here, of course, Mr. Perkins has no work responsibilities during the time after his shift ends, and the question asked in those cases -- that is, whether "the employee was engaged to wait," in which case the time is compensable, or he "waited to be engaged," in which case it is not, Skidmore, 323 U.S. at 137 -- is unhelpful in determining whether Mr. Perkins's thirty-minute break was spent predominantly for the benefit of the Hospital.

Mr. Perkins also relies on Owens v. Local No. 169, Association of Western Pulp and Paper Workers, 971 F.2d 347 (9th Cir. 1992), which outlined a number of factors to be examined "in determining whether an employee plaintiff had use of on-call time for personal purposes."  (Pl. Memo. at 7).  However, that case, too, concerns employees who were on call after their normal daytime shifts. Owens, 971 F.2d at 348.  Indeed, each of the cases from which Owens derives its factors involves either employees who were on call during off-duty hours, Armour, 323 U.S. at 134; Renfro v. City of Emporia, 948 F.2d 1529, 1531 (10th Cir. 1991); Bright v. Houston Northwest Medical Center Survivor, Inc., 934 F.2d 671, 672 (5th Cir. 1991) (en banc); Brock v. El Paso Natural Gas Co., 826 F.2d 369, 370 (5th Cir. 1987), or employees whose entire work period was spent on call, Cross v. Arkansas Forestry Commission, 938 F.2d 912, 914 (8th Cir. 1991); Norton v. Worthern Van Service, Inc., 839 F.2d 653, 654 (10th Cir. 1988).  See Owens, 971 F.2d at 351 nn.8-14.  It is not surprising, then, that the factors the Ninth Circuit used to determine whether that on-call time was spent predominantly for the

benefit of the employer -- such as whether employees were required to live on premises, had their movements excessively restricted "geographically," or had to respond to calls within an "unduly restrictive" time period -- are better suited to determining the question of "predominant benefit" where the employee is on call for extended periods of time.  Owens, 971 F.2d at 351.  That is not the case here, where on-call time consists of thirty minutes during Mr. Perkins' regularly-scheduled shift.

Mr. Perkins' best argument derives from the fact that only one Safety Officer/Fire Safety Director is assigned to Grand Concourse each shift and that New York City law requires the presence of a Fire Safety Director "on or about the premises . . . at all times." (Def. 56.1 Statement, ¶ 11; Pl. Memo. at 5-6).  In finding that employees who were required to stay at their work site during lunch in order "to secure the area and its equipment and prevent possible harm to the public" were entitled to compensation, the court in SNET noted that the employees "perform[ed] valuable security service" for the company during their lunch break: "[T]he workers' on-site presence is solely for the benefit of the employer and, in their absence, the company would have to pay others to perform those services."  121 F.3d at 63, 65; see also Babcock, 806 F.3d at 161 (Greenaway, J., dissenting) ("As in [SNET], without Plaintiffs' presence at the [correctional] facility during meals, Defendant could be required to hire others during that time period. Plaintiff's allegations regarding the restrictions on their movement and activities are sufficient to state a claim under the

15

FLSA that the meal period is compensable work."). However, neither SNET nor subsequent cases indicate that the mere fact that the employer receives some benefit from an employee's presence on the premises is determinative; rather, the cases make clear that the predominant benefit inquiry is fact-specific. See, e.g., SNET, 121 F.3d at 64.   In SNET, the employees had "substantial duties" to perform, id. at 63 -- including consistent surveillance to ensure the security of valuable equipment and the safety of a curious public on a dangerous work site, as well as addressing inquiries from the public -- such that they "carr[ied] out compensable responsibilities and duties on open job sites for at least 80% of their lunch periods." Reich v. Southern New England Telecommunications Corp., 892 F. Supp. 389, 394-96 (D. Conn. 1995). On the other hand, in Babcock, although the prison guards were required to stay on premises to maintain a "safe inmate-to-corrections officer ratio," Babcock, 2014 WL 688122, at *9, and remain near their equipment to efficiently respond to an emergency, those restrictions and duties did not constitute "work" as defined by the FLSA, Babcock, 806 F.3d at 157.  Similarly, in Haviland, security officers who worked in single-person shifts were required to stay on premises and be available in case of an emergency. 729 F. Supp. 2d at 1041, 1059-60.  Nevertheless, the restrictions did not require that they be paid for their meal break. See id. at 1066-69 (distinguishing restrictions at issue in SNET).  So it is here.  Although the Hospital indisputably receives some benefit from Mr. Perkins' presence on site, he has the ability to spend his

16

thirty-minute break as he wishes as long as he remains on the premises with a communications device so that he can be contacted in the event of an emergency, and his thirty-minute break has rarely, if ever, been interrupted. Those restrictions do not "convert[] meal time to work time."[9] Id. at 1061. The fact that the fire alarm system is occasionally or even regularly off-line (Perkins Aff., ¶¶ 14-17) does not change this conclusion. In such situations, Mr. Perkins' meal break duties are not materially changed; rather, he merely becomes responsible for contacting the Fire Department in the event of an emergency. (Perkins Aff., ¶ 14). In these circumstances, the undisputed facts establish that Mr. Perkins need not be compensated for his thirty-minute meal break.

Conclusion

For these reasons, the defendant's motion for summary judgment (Docket no. 100) is granted. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

*/s/ James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

---

[9] Because I find that Mr. Perkins does not perform work during his thirty-minute meal break, I need not address the defendant's argument that Mr. Perkins' failure to follow the Hospital's policy for reporting interrupted meal breaks precludes his claim. Mr. Perkins has not identified any meal period that has been interrupted and for which he would be entitled to compensation.

```
Dated: New York, New York
       October 31, 2016
```

Copies transmitted this date:

Jerold C. Rotbard, Esq.
Harold, Salant, Strassfield & Spielberg
81 Main St., Suite 205
White Plains, NY 10601

Nicholas R. Bauer, Esq.
John P. Keil, Esq.
Colazzo, Florentino & Keil, LLP
747 Third Ave.
25th Floor
New York, NY 10017